12  473
48  196
12  473
51  1005

GEORGE GOTTSCHALK, BERTRAND SALOY, Subrogated, *v.* B. DE SANTOS et al.—P. A. LANAUZE, Third Opponent.

By Art. 763 of the Code, which declares: "The use which the owner has intentionally established on a particular part of his property in favor of another part, is equal to a title with respect to perpetual and apparent servitudes thereon, is meant the disposition which the owner of two or more estates has made for their respective use.

The intention to create a servitude for the respective estates, will not suffice, nor will it suffice that it was partially established, it must have been perfected in such a manner as to be useful to the adjacent lots.

Where a party is present at a sale of property by the Sheriff, and does not notify the persons present, nor the purchaser, of his rights, he cannot afterwards set up a claim to the property.

APPEAL from the Fourth District Court of New Orleans, *Reynolds,* J.
*G. & C. E. Schmidt,* for plaintiff and appellant. *J. L. Tissot,* for defendants.

COLE, J.   *Bernard De Santos* was formerly the proprietor of four contiguous lots, numbered on the plan 1, 2, 3 and 4, having each an equal depth, and all of them fronting on St. Ann street, and No. 1 running parallel with St. Claude street.

During the time of his ownership of said property, he sold to *A. Roger* lot No. 1, less 5 feet, 6 inches and 6 lines in the rear of said lot, which he reserved, but he conceded to his purchaser a perpetual servitude of passage.

Afterwards he mortgaged lots 2, 3 and 4, and in default of payment of the mortgaged debt, they were sold and adjudicated to *P. A. Lanauze.*

*G. Gottschalk* and *B. Saloy* being creditors of *Bernard De Santos,* caused the said alley-way to be seized; *Lanauze* intervened and opposed the sale, claiming it as his own.

*Lanauze* bases his title on the ground that the reservation of this alley-way in the sale to *Roger,* whilst he was proprietor of the four lots, was *la destination du père de famille,* or a use which *De Santos* intentionally established on lot 1 for the respective use of the four lots; that lots 2, 3 and 4 had been mortgaged with all their privileges and appendages, sold judicially to satisfy the mortgage, and adjudicated to him with all their privileges and appendages; that this alley-way being of that character, was consequently adjudicated to him with the lots, and is his property, with the reservation however of the right of passage to *Roger.*

The question in this case is whether this passage or alley-way was intentionally established by *De Santos* for the respective use of the four lots.

60

It is probable that his intention in creating this alley-way was originally for the benefit of his three adjoining lots, or at least for one of them, to wit, lot 2, because he had no property in the vicinity, and in selling the lot in front of the alley to *Roger*, he did not sell it to him, but only gave him the right of passage. What other use could he have had for it then, except for the use and convenience of the whole or a part of his other three lots ?

This is not called a servitude, but "*destination* du père de famille," or the use which the owner has intentionally established on a particular part of his property in favor of another part, and which is equal to a title with respect to perpetual and apparent servitude thereon, and by this "destination du père de famille," is meant the disposition which the owner of two or more estates has made for their respective use. C. C. 645, 763.

But the question now arises, whether the intention of a proprietor of contiguous lots, to make some convenience for their respective use, can be considered as a "destination du père de famille," when such intention is not carried into complete execution.

In order to determine this question, the nature and effect of this "destination du père de famille" must be examined :

1st. This disposition of the owner for the advantage of his contiguous lots is equal to an alienation, for the Civil Code, Art. 727, says, "the creation of a servitude is an alienation of a part of the property," and although Art. 645 C. C. says that the application which the owner makes of one estate to the advantage of another, is not called a servitude, but a disposition of the owner, still it is in reality a servitude.

For Art. 763 C. C. says : "The use which the owner has intentionally established on a particular part of his property in favor of another part, is equal to a *title* with respect to perpetual and apparent servitudes thereon. By this is meant the disposition which the owner of two or more estates has made for their respective use."

Art. 765 C. C. says : "If the proprietor of two estates between which there exists an apparent sign of servitude, sell one of those estates, and if the deed of sale be silent respecting the servitude, the same shall continue to exist actively or passively in favor or upon the estate which has been sold."

From these Articles of the Civil Code, it is clear that the "destination du père de famille" is equal to an alienation of property, and as the rule is that he who claims the property of another, must show a title, so he who claims a servitude of the character now under consideration, must show a title to the same ; that is, he must establish clearly that, not only was it once the intention of the proprietor of several contiguous lots to establish a servitude for their respective use, but that he actually executed his purpose by making such changes in his property, that this servitude could be beneficial to all the lots.

As this servitude is an abandonment of property, an alienation, and equal to a title, it must not then be *intended* only or partially established, but must be perfected in such a manner that it can be useful to the adjacent lots.

It is true that Art. 646 C. C. says that it is not necessary that the benefit from the servitude exist at the time of the contract, "a mere possible convenience or remote advantage is sufficient to support a servitude ;" but this does not militate against our view, because this Article takes it for granted that the servitude has been established, and this is what is denied in the case at bar.

Now, in the case at bar, the alley-way extended only in the rear of lot 1. If

it had been intended for the use of the other three lots, would not *De Santos* have continued it the whole length in the rear of lots 2, 3 and 4 ?

If *De Santos* had built houses on those lots, and had extended the alley-way their whole length, and if there had been doors or gates communicating from each of the houses into this alley-way, then the servitude would have been clearly established; but nothing of this kind was done. It may be that such was his intention, in whole or in part, in the event he had continued the proprietor of lots 2, 3 and 4; but as he was deprived of them by a forced sale, before his intention had been carried into execution, it would be unjust to consider this intention, which was conditional, depending on his continued ownership of the remaining lots, as an alienation and equal to a title, and thus to deprive him of this alley-way. It should also be observed that this passage was not necessarily an apparent servitude for the three other lots, because often one house has an alley-way restricted entirely to its own use, and not extended so as to benefit the adjacent lots.

We could also remark that, unless this alley was extended, it could only benefit lot 2, in the event it had a door opening into it, but could not be of utility to lots 3 and 4, unless they belonged to the same proprietor. Now it may be if *De Santos* had remained owner of lots 2, 3 and 4, he would have had a door opening from his house on lot 2, into this alley, which he might have done without extending it, but would have made no communication between the houses he might erect on lots 3 and 4. How then can this alley be considered a servitude for the use of lots 2, 3 and 4, when it may be he would only have made it useful to lot 2, or if his intention had changed, he might not even have had any communication between the house on lot 2 and this passage ?

It should also be remembered that this alley-way was not necessary to lots 2, 3 and 4, because they front on St. Ann street, and *Lanauze*, the opponent in this suit, would have bought these lots, even if the servitude of the alley did not appertain to them, because the testimony establishes that for some time after his purchase, he was under the impression that he had no right to this alley. Neither was there anything said expressly about this servitude in the mortgage of these three lots, nor in the Sheriff's sale to *Lanauze*, when a title was made to him, after they had been sold to satisfy the mortgage, and adjudicated to him.

As then the alley-way was not expressly mentioned in the mortgage, unless it is considered an apparent servitude, it was not necessarily one of the dependencies or appendages of the lots, and could not then have been mortgaged with them, and consequently it was not sold by the Sheriff to *Lanauze*, for the latter could have no greater rights than *Lambert*, the mortgagee.

We are of opinion then that this passage cannot be considered as established for the common benefit of these four lots, nor as a "destination du père de famille," and that it was not adjudicated to *Lanauze* at the Sheriff's sale. But even if it is considered a servitude established for the use of the four lots, and was purchased by *Lanauze* at the Sheriff's sale of the three lots, as *Lanauze* was present at the Sheriff's sale of this alley-way, and did not notify the persons present, nor the purchaser, of his rights, he cannot now succeed in his present claim. 5 An. 67, *Moore* v. *Lambeth;* ib. 367.

Vide 7 An. 652, *Fisk* v. *Haber ;* 11 L. *Broussard* v. *Etie;* 8 An. 145, *Parish et al.* v. *Municipality No. 2 et al. ;* 1st An. 407, *Durel, Adm.* v. *Boisblanc et*

GOTTSCHALK
*v.*
DE SANTOS.

*al. ;* C. C. Arts. 645, 646, 725, 727, 764, 765; 4 L. R. 312, *Alexander* v. *Bog-hel ;* 5 R. 16, *Barton* v. *Kirkman.*

It is, therefore, ordered, adjudged and decreed, that the judgment of the lower court be avoided and reversed, and it is ordered, adjudged and decreed, that the third opposition of *P. A. Lanauze* and his demand be rejected, and that he pay the costs of both courts.