## No. 8275.

### MARY TAYLOR, WIFE OF T. P. MAY, vs. ARCHIBALD BOULWARE.

Where the owner of two lots, with buildings on them, sells one of them, and between them an apparent sign of servitude, such as windows, exists, and the deed of sale is silent respecting the servitude, it shall continue to exist in favor of the lot which has been sold.

The circumstance that the blinds to the windows were closed and boards nailed across them at the time of sale, and had been continuously for many years, will not change the apparent servitude, or extinguish it. In order to constitute an extinguishment of it, the works erected to present an obstacle to the exercise of the servitude must be of a permanent and solid kind, and the obstacle thus presented must be absolute. Non-user of a window, or inability to use it, because of obstructions apparently temporary, will not be a release or extinguishment of the servitude.

Water pipes, gutters, iron staples driven into a wall, and such like, will constitute a servitude upon one lot in favor of another lot, when erected by the owner of both and used during his ownership, and this apparent servitude will continue upon the lot owing it after it has been sold.

Screens erected on a lot, which obstruct the view over it from the house on an adjoining lot, but do not impede or prevent the opening of the window shutters in such house for the enjoyment of so much light and air as can be had by the opening of the shutters merely, are not an obstruction to the enjoyment of the servitude of the windows, which can be successfully complained of.

APPEAL from the Civil District Court for the Parish of Orleans. *Tissot*, J.

*Thos. J. Cooley,* for Plaintiff and Appellant:

Plaintiff claims to have certain windows, shutters, etc., in the house she purchased from defendant, and which defendant had caused to be closed and nailed up after the sale, opened, and her right to the use of the same decreed; and also that certain screens

erected by defendant opposite to said windows be removed, and for damages, and for the removal of certain fixtures over the dividing line, etc.

1.  Plaintiff claims that the windows and shutters, etc., were not closed at the time of the sale—one certainly was not, as is clearly proved and not contested in the court below. See Breard vs. Ins. Co., 29 An. 764, and Mathilde vs. Levy and Scheuir, 24 An. 401, as to reliability of testimony of witnesses.

2.  Even if the window shutters were closed at the time of the sale, it is contended that they were continuous apparent servitudes, established by defendant himself as owner of two estates, and as no mention is made of them in the act of sale, they must remain in favor of plaintiff.  C. C. 769 (765); Alexander vs. Boghel, 4 L. 312; Barton vs. Kirkman, 5 R. 16; Lavillebeuvre vs. Cosgrove, 13 An. 323; Cleris vs. Tieman, 15 An. 316; Durel vs. Boisblanc, 1 An. 407; Gottschalk vs. De Santos, 12 An. 473.

3.  "Servitudes are either apparent or non-apparent  Apparent servitudes are such as are to be perceivable by exterior work, such as a door, a window, an aqueduct."  C. C. Art. 728 (724).

4.  Servitudes can only be extinguished in the mode and in the contingencies provided by law.  C. C. 783 et seq.; Duranton, vol 5, No. 654; Toullier, l. II, c. iv, § 7, No. 684; Demolombe des Servitudes, v. 2, pp. 488 et seq.; Lavillebeuvre vs. Cosgrove, 13 An. 324; C. C. Art. 820; Mourlon Rep. Ecrites, v. 1, p. 870, sec. 4, and p. 873, sec. 3.

5.  The line dividing the two properties is six inches outside of the wall of plaintiff's house, and she bought from defendant the property "with the buildings and improvements thereon, and appurtenances thereunto belonging or in anywise appertaining "—and there being no qualification in the act of sale, plaintiff became owner of everything within that line, as "the ownership of the soil carries with it the ownership of all that is directly above it and under it," and therefore all apparent servitudes.  C. C. 505 (497).

6.  If there were strips nailed across the shutters, they could not be seen either from the outside or from the inside—so that plaintiff is not bound by this pretended extinguishment of a clearly apparent servitude even if such a work could have the effect of extinguishing an apparent servitude.  C. C. 2520, 2496, 2541, 2542.

7.  "The seller who knows the vice of the thing he sells, and omits to declare it,  *  *  is amenable to the buyer in damages."  C. C. 254-5.

8.  "The discovery of the vice is not to be presumed—it must be proved by the seller."  C. C. 2546 (2524).

9.  If the property was burthened with a non-apparent servitude, and no declaration made of it by the vendor, the sale may be rescinded or the price reduced, according to the gravity of the case.  C. C. 2515 (2491); Troplong, Vente, Nos. 534 et seq., 525 and 526; Duranton, vol. 16, No. 310.

*Singleton & Browne* for Defendant and Appellee :

The opinion of the Court was delivered by

MANNING, J.  The defendant was the owner for several years of the two adjoining lots on Camp street numbered 469 and 471.  He built a brick building of two stories and an attic, with a two-story wing, on No. 471 in 1855, and a cottage of one story and attic on No. 469 in 1865. The houses were two and a half or three feet apart.

The brick house was built with windows in the side towards lot No. 469, in which were the usual sashes, and these were covered by venetian blinds with movable or revolving slats.  When the defendant built the cottage, he nailed boards across these windows on the outside, thus preventing the opening the venetian shutters, and shutting

out the view over the cottage lot, and excluding light and ventilation from that side of the brick house. These boards had remained for about fifteen years, viz., from 1865, when the cottage was built, to 1880, when he sold the brick house and lot to the plaintiff. They were there when the plaintiff took possession in the same condition as when first put there.

Mrs. May bought in April, 1880, for five thousand two hundred and fifty dollars cash, but Boulware was to remain in possession until first of September following. A few days after she went into the occupancy of the brick house, she gave Boulware notice to remove the strips of board from across the window blinds, so that the shutters might be opened and closed at her pleasure, and if it was not done in forty-eight hours, that she would have them removed. He refused to remove them, and she had it done. Thereupon he had screens erected on his own lot, No. 469, opposite the windows of No. 471, to protect the adjoining cottage from view. The tenant of his cottage had promptly complained as soon as the windows were opened, and notified the defendant that he would be compelled to move if the windows were not closed as before. These windows were in the upper story and gable end of the attic, and overlooked the cottage and the lot No. 469.

The object of the present suit is to compel the defendant to remove these screens, and for the recovery of fifteen hundred dollars as damages, suffered and to be suffered, from deprivation of light and air, and twelve hundred dollars additional for depreciation in the value of the brick house, from the assertion by the defendant of his pretended right to shut out light and air from that side of the house; and in the event the Court should hold that the defendant rightfully closed the windows and erected the screens, then the plaintiff claims such right was a non-apparent vice and defect in the property, for which a reduction in the price of twelve hundred dollars should be allowed, for which sum judgment is prayed.

The plaintiff also complains of a water pipe fastened to the wall of her house, leading from the cottage; and of two sheds on the cottage lot that overlap the dividing line one inch or more, which sheds are fastened to the weather boards of the rear of her building; and a gutter runs across the line a foot or more; and the front gate-bell is fastened to her property; and two iron staples for supporting a clothes-line are driven into her wall; all these things being for the convenience of the cottage lot, and cause her five hundred dollars damage. She prays the removal of all of them.

The defendant justifies the erection of screens for the protection of his cottage, charges the plaintiff with a trespass in illegally and tortiously opening the windows which had been closed for fifteen years

continuously, and demands two thousand dollars as damages therefor, and prays that the windows be closed as before. The answer passes by the complaints of the two iron staples, and *id genus omne*, in contemptuous silence.

The provisions of the Code on the matter are: If the owner of two estates, between which there exists an apparent sign of servitude, sell one of those estates, and if the deed of sale be silent respecting the servitude, the same shall continue to exist actively or passively in favor of or upon the estate which has been sold. Rev. Civ. Code, Art. 769.

Servitudes are either visible and apparent, or non-apparent. Apparent servitudes are such as are perceivable by exterior works, such as a door, a window, an aqueduct. Non-apparent servitudes are such as have no exterior sign of their existence, such for instance as the prohibition of building on an estate, or of building above a particular height. Ibid, Art. 728.

The destination made by the owner is equivalent to title with respect to continuous apparent servitudes. By destination is meant the relation established between two immovables by the owner of both, which would constitute a servitude if the two immovables belonged to two different owners. Ibid, Art. 767.

There does not seem to be room for doubt that there existed an apparent sign of servitude in the windows when the defendant sold to the plaintiff, and the deed is silent respecting it. Not only is the deed silent, but the defendant was reticent to all to whom he should have spoken of the barred windows, if barring them was supposed by him to have the significance he now claims for it. No one, examining a house with a view to purchase or occupancy, and seeing the venetian blinds with a board nailed across them on the outside, would think, or have reason to think, that this obstruction to opening them was permanent. It does not alter the case that these windows had been thus closed fifteen years or other considerable time. The defendant had the right to close them when he did, for he was owner of both lots, and he could have taken them away, and made that side of his house an unbroken surface of brick, and had he done so before Mrs. May's purchase, she could not have complained. But instead of doing that, he left the windows and blinds, perceptible on the exterior and from the interior, with all appearance of destination to use, save only that immediate present use was prevented by an obstruction that in appearance was temporary. Very great stress is laid, both by defendant and by the Judge below, on the circumstance of the slats of the venetian blinds having been "reversed," by which they seem to mean the slats were turned up.

Venetian blinds are turned up or down every day as occasion requires. The object in having the slats rolling or movable is to turn them either way, and the way in which they are turned depends upon the object to be accomplished. These windows cannot be seen from the street, but of course the plaintiff saw them from within when she examined the house, and it is urged that as the " blinds were reversed" and a board nailed across the outside, she was bound to notice that condition. We take for granted she did notice it, and that is precisely why we think she had a right to believe she would have light and air through the windows, for she could not see, from within, the board nailed across the outside, and if she did see it while outside most likely regarded it as a precaution of safety. The real estate agent who negotiated the sale for Boulware examined the house, passed all the openings inside, and did not notice the boards, nor did Boulware mention to him that the windows were closed permanently, and not intended to be reopened. The servitude was visible and palpable as in Durel vs. Boisblanc, 1 Ann. 407; see also Alexander vs. Boghel, 4 La. 312; Barton vs. Kirkman, 5 Rob. 16.

The identical question here presented came before the Court in Lavillebeuvre vs. Cosgrove, 13 Ann. 323. Six months before Cosgrove bought, the plaintiff Lavillebeuvre closed a window which had existed in the partition wall from the time when the wall was built, by nailing heavy planks across the venetian blinds of the window on the outside. The planks were there when Cosgrove bought, and he took them away and reopened the window. Lavillebeuvre brought the action to have the window closed, and sounding in damages for a trespass, and contended that Cosgrove acquired the property as it was at the time of his purchase, and because the window was then closed by boards, it must remain boarded up in perpetuity, and the removal of the boards was a trespass. The Court held otherwise saying, it is pretended the servitude was lost by barring up the window, but it was not. The Code expressly provides, in order that the tacit release of a servitude may be inferred from the permission given, by the owner of an estate to which it is due, for the erection of works which prevent the exercise of it, it is necessary that the works thus constructed be of a permanent and solid kind, such as an edifice or walls, and that they present an absolute obstacle to every kind of exercise of the servitude. Rev. Civ. Code, Art. 820. There can be no question of prescription in the case at bar since Boulware owned both lots up to the sale to Mrs. May, and he cannot prescribe against himself.

Nor can the servitude be claimed to have been extinguished. Among other means of extinguishing servitudes is such a change taking place

that the thing subject to the servitude cannot be used. Rev. Civ. Code, Art. 783. And as an example of a change which does not extinguish the servitude the French writers say, thus a window, an aqueduct, preserves the right of servitude, although it is not used. Toullier, L. 31, T. 4, c. 3, No. 709; 2 Demolombe *des Servitudes*, p. 488 *et seq.*

But it does not follow as a corollary, if Mrs. May has a right to open the windows for light and air that the defendant's screens cannot remain to obstruct the view into his lot. She has a right to such light and ventilation as may be obtained by the removal of the boards from the outside of the windows, but the screens are equally necessary to protect his cottage property from intrusive eyes. There can be no doubt that the defendant could build another story to his cottage, which would obstruct the view from the brick house as much as the screens.

As to the other branch of the case, it seems certain from the proof that the water pipe, and iron staples, *et cætera*, are servitudes upon the plaintiff's property due to or in favor of the defendant's lot, established by the latter when owner of both, and existing at the time of the plaintiff's purchase. The Judge below so found, and he also rejected the money demands of both parties.

It is therefore ordered and decreed that the judgment of the lower court is affirmed in this respect, viz: rejecting the demands of both parties for damages, and disallowing the plaintiff's demand for the removal of the staples, and sheds, and gutter, etc., and in this respect that it be amended, so that the plaintiff have judgment recognising her absolute right of servitude in all the windows as claimed, and in this other respect that it be reversed, wherein the removal of the screens is ordered and the defendant's claim to have certain of the windows re-closed and the boards again nailed across the blinds is recognised, which claim is now rejected, the costs of appeal to be paid by the parties in equal parts.

----

## On Rehearing.

The plaintiff claims that so much of the judgment of the lower court as was in her favor cannot be disturbed because the appellee did not pray any amendment. No prayer for amendment had then been filed, but the defendant acted on that suggestion and filed an answer praying the amendment he desires. This answer was not filed until nearly two months after the plaintiff's petition for rehearing. Of course it comes too late.

It is also claimed by the plaintiff that she cannot exercise the right of servitude in the windows unless she is permitted to open the shutters fully and entirely, but we held, while the defendant could not

again reclose the windows and nail boards across the shutters, she was entitled only to such light and ventilation from the windows as may be obtained by the removal of the boards from across the shutters, which does not imply that she may fully open them. If she may fully open the shutters, the defendant could not erect a second story upon his cottage which would obstruct her view, but we held that he could, and we said it to illustrate the extent of that servitude in the windows which she had.

The removal of the boards from across the shutters enables the plaintiff to move the slats up or down at pleasure, and to open the shutters even partially, but not to spread them " wide open," and thus obtain an unrestricted view upon and over the defendant's lot and cottage.

It is therefore ordered and decreed that the judgment of the lower court, ordering the screen opposite the window marked B to be removed, remain unaltered, and that plaintiff's right of servitude in the windows does not extend to opening the shutters fully and entirely, but only so far as was prevented by the boards nailed across them, and that so much of our former decree as is inconsistent herewith is set aside, and that the defendant pay the costs of appeal.