(45 South. 253.)

No. 16,465.

CITY OF ALEXANDRIA v. THIGPEN et al.

SAME v. GREEN.

(June 17, 1907.    Rehearing Denied Jan. 9, 1908.)

1. DEDICATION—INTENT TO DEDICATE.

The intent to dedicate property to public use for street purposes must be clearly and unequivocally manifested on the face of the deeds and maps relied on by the party alleging dedication.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 15, Dedication, § 13.]

2. SAME—EVIDENCE.

Where a suburban tract of land, after having been platted as a subdivision, was sold as a whole by metes and bounds, a reference to the plat attached to the deed will be considered as made for the purpose of description, and not for the purpose of dedication.

[Ed. Note.—For cases in point, see Cent. Dig vol. 15, Dedication, §§ 34–41.]

3. SAME—BURDEN OF PROOF.

Where the tract so purchased was subdivided anew according to a certain plat, which was subsequently lost, and the loss supplied by a certified copy of the original survey, duly recorded, the burden of proof is on the party affirming dedication to show by a clear preponderance of the evidence that the missing plat included the land in dispute within the lines of a certain street as alleged and that the recorded plat was erroneous in this respect.

(Syllabus by the Court.)

Appeal from Thirteenth Judicial District Court, Parish of Rapides; Wilbur Fisk Blackman, Judge.

Actions by the city of Alexandria against J. B. Thigpen and J. E. Thorsell and against C. R. Green. Actions consolidated. Judgment for defendants, and plaintiff appeals. Affirmed.

White, Thornton & Holloman, for appellant. Blackman & Overton, for appellees.

LAND, J. The city of Alexandria sues the defendants in these consolidated suits as the wrongful possessors of a certain strip of ground dedicated to public use as a part of Wheelock avenue. Defendants in their turn claim that said strip is private property, held by them in good faith under legal titles, and call their vendors in warranty.

The question is dedication vel non, and plaintiff has appealed from an adverse judgment.

On March 20, 1891, Mrs. Sallie C. Day sold and delivered to the Alexandria Land & Improvement Company, Limited, the following described property, to wit:

"A certain parcel or tract of land of irregular shape, fully described in the map hereto attached and made part hereof, marked 'B,' the same being indicated by red lines, which said map is paraphed by me, notary ne varietur, of this date, to identify the same herewith, and containing the quantity of three hundred and twenty eight $19/100$ acres, being bounded on the west by lands of J. W. Ball, on the north by the center of Bayou Rapides road, on the east by the Texas & Pacific road, the thirteen acres sold by Welch and Marye to R. W. Bringhurst, land of Berghman Armstead, and the center of Bayou Robert road, on the south by lands of J. R. Thornton, and on the southwest by lands of R. W. Hynson, the said two tracts of land comprising in all about 345 acres, more or less, as fully described in the plat marked 'B,' together with all the buildings and improvements thereon, rights, ways, and privileges thereunto belonging."

The map referred to was filed with the deed for record, but was not actually recorded in the book of conveyances. The said map was compiled in December, 1890, and purported to represent the "Day subdivision" of Scott's bottom, Rapides parish, south of Alexandria, which is defined by red lines. The Bayou Rapides road is excluded, and also a

strip 15 feet wide lying between the red line and a line designated as "Line of R. R. Grant." The whole space between the red line and the Texas & Pacific Railroad track is marked "Wheelock Ave." Thus, according to said map, all of Wheelock avenue, except 15 feet, is taken from the railroad right of way. The strip mentioned is shown by the evidence to have been a private road on the Day tract.

The land company in 1891 had the tract purchased from Mrs. Day resurveyed and subdivided on a different plan by R. W. Bringhurst, parish surveyor. The original map or plat made by Bringhurst was never recorded, and in February, 1897, R. W. Bringhurst made and certified as true and correct a copy of the original survey made in 1891, which was duly recorded, together with an express dedication of the streets and alleys as required by Act 134, p. 189, of 1896. This plat of survey purports to represent West Alexandria, La., which was subsequently incorporated as a town, and later became by merger a part of the city of Alexandria. According to this map of 1897 there is a strip of ground between Wheelock avenue and the right of way of the Texas & Pacific Railroad. There is in the record a mass of conflicting testimony as to whether the plat of 1897 accorded with the plat of 1891 as to the delimitation of this strip. The latter plat was never recorded, but was used in making sales of lots, and was printed as an advertisement in a local paper. The printed map does not show the strip; but as the map was not lithographed or photographed, and is erroneous in many details, the omission thereon of a dotted line, indicating a reservation of the strip, is not of particular significance. The surveyor who made the original plat testified that to the best of his recollection the strip did not appear thereon; but, when confronted with the plat of 1897 made and certified by him, the witness had little or nothing to say in explanation.

The city of Alexandria claims that the strip in dispute, as a part of Wheelock avenue, was dedicated to public use by the Day map of 1890 and the Bringhurst map of 1891, both unrecorded.

As already stated the Day map of 1890 reserved 15 feet for Wheelock avenue. This strip, according to said map, is contiguous to the right of way of the Texas & Pacific Railroad. The description in the Day deed, aside from the map, covers the strip as a part of the tract sold. Considering the map, there is a reservation of a strip 15 feet in width for street purposes, while the description in the deed leaves no reservation whatever. The surveyor wrote on the Day map, "All dimensions more or less." But even such a reservation cannot be construed so as to widen the strip from 15 to 60 feet on the average. Doubtless the intent was to reserve this strip when the map was made; but it is not reserved in the description in the deed, which makes the railroad right of way one of the boundaries of the tract conveyed. Where there is so much doubt, the intent to dedicate cannot be inferred. The map was never recorded, and Mrs. Day made no sale with reference to it. In selling to the land company all of the streets as per map were included. The sale as made was of a tract of land containing a certain number of acres, and the boundaries as given included the whole tract. There is no reservation or exception in the deed, and we cannot hold that the strip in dispute was excluded, without holding for the same reason that all of the streets of the subdivision were also excluded. That it was the intent of Mrs. Day to sell the whole tract from boundary to boundary is certain on the face of the deed, and the map was annexed for the purpose of further description, and not to dedicate any part of the land conveyed. Mrs. Day in selling disregarded the paper subdivision and sold all the streets laid out on the plat. Then how can it be said that she intended to reserve or dedicate the strip in Wheelock avenue?

TAXPAYERS v. POLICE JURY.

As to the alleged dedication by the land company little remains to be said. The map recorded in 1897 shows that the strip in dispute formed no part of Wheelock avenue. The testimony as to what was shown by the last map of 1891 is conflicting. The recollection of witnesses as to the existence vel non of a dotted line on a plat seen 10 or 15 years ago is at best very uncertain. In the case of the surveyor, who made both maps, we have seen that his memory was in fault, as shown by his own plat and certificate.

The fact of dedication by the map of 1891 being doubtful, the conduct of the parties in interest as to the subject-matter in dispute may be considered as corroborative evidence. The strip in dispute has always been claimed and used as private property by the land company and its assigns. It has never been worked or cared for by the municipal authorities as a part of Wheelock avenue. The digging by the city of two or three ditches across the strip for drainage purposes is without significance. Plaintiff never made any claim to this strip as public property prior to the institution of the present suits, at which date the defendants were engaged in building thereon under permits from the city engineer.

After purchasing the tract of land the land company sold a piece, parcel, or lot of ground containing 2.73 acres, being lot No. 50 of the Day map, "bounded on the northeast by center of bayou, southwest by land of Bertrand Weil, southeast by property of Messrs. Leckie and Kimber, and northwest by the prolongation of the rear line of property of Bertrand Weil to the center of the bayou."

This lot had no frontage on any street, and the evidence shows that the sale was made with the guarantee of an outlet in the future, to be furnished when the land company subdivided the property. This guarantee was complied with. This sale was made after the Day subdivision had ceased to exist by reason of the sale of the tract as a whole and before the land company subdivided the property. The reference to the Day map was merely descriptive and was not intended as a dedication of any street. 13 Cyc. 455–457. The purchaser knew that the lot had no outlet and could have none until the new subdivision was made.

As the plaintiff relies on alleged dedication by deeds made with reference to certain maps, the question is whether the intention to dedicate is clearly and unequivocally manifested on the face of the papers. 13 Cyc. 452.

We do not think that such an intention clearly appears on the face of the deeds and maps referred to. The Day deed contradicts the map annexed, and the map of 1897 shows no dedication of the strip as alleged. What the missing map of 1891 showed is a matter of so much doubt that no satisfactory conclusion can be reached on the subject.

We see no good reason to disturb the judgment appealed from, and it is therefore affirmed, at appellant's cost.