from rejects the plaintiff's demands at his cost.

Nelson Bros., a partnership, under contract with the Louisiana highway commission, paved state projects Nos. 4000 and 4600, located in Lincoln parish, La. The defendant entered into a written contract with the plaintiff for the use of the latter's mules and equipment in its construction work on said projects. The contract is as follows:

"Monroe, La., Sept. 26, 1929.

"An agreement entered into this the 26th day of September, between Nelson Bros. and M. S. McGuire, of Monroe, La. McGuire is to furnish the following equipment, of which he is the owner, to Nelson Bros. for work on projects No. 4600 and No. 4000, between Monroe and Ruston, Louisiana:

21 head of mules, all workable.

10 Slips

6 Fresnoes

1 Western Road Plow and hitch.

1 Finishing plow.

4 Wheeled scrapers (2nd hand)

"For the above Nelson Bros. is to pay M. S. McGuire the sum of $30.00 (thirty) dollars for each week day, beginning Friday, September 27th, Sunday excepted and not counted. Nelson to buy (3) three new Western Wheeled Scrapers, and upon completion of jobs, wheelers are to become property of M. S. McGuire.

"[Signed] Nelson Bros.
"By Harry B. Nelson.

"Accepted 9-26-29
"M. S. McGuire."

"P. S. In event any mules are worked on Sunday Nelson Bros. are to pay M. S. McGuire $1.00 per head per day in excess of the amount named below.

"[Signed] H. B. Nelson."

Nelson Bros. used McGuire's mules and equipment for twenty days, and, because McGuire appeared on the work daily under the influence of liquor and retarded the work of his teams, the defendant, after using the plaintiff's teams and implements for twenty days, paid the plaintiff, as per the contract, for that period of time, and returned them to the plaintiff.

■ The issue presented is whether or not the contract with the plaintiff was one for the use of plaintiff's mules and implements, per day, or for the time required for the completion of defendant's contract with the highway commission. We think the lower court correctly held that the contract was not for any fixed period of time, and that it was terminable at the option of either party thereto. An attempt was made to show that the written contract does not express the true intent of the parties. In the case of Bank of Napoleonville v. Knobloch & Rainold, 144 La. 100, 80 So. 214, this court said:

"When persons commit their agreements to writing, their intentions cannot be sought outside the four corners of the written instrument."

■ The plaintiff does not allege error in the contract. Therefore the case he relies on, Atlas Oil Co. v. Logan, 166 La. 28, 116 So. 582, is against his contention. In that case, the rule is announced that if, *under proper allegations*, the written instrument does not, from accident or error, express the real intention of the parties, parol proof may be offered to show that intention.

For the reasons stated, we think the judgment appealed from is correct, and it is therefore affirmed, at appellant's cost.

## FAUNCE v. CITY OF NEW ORLEANS.
### No. 14305.

Court of Appeal of Louisiana. Orleans.
May 22, 1933.

58

W. Lewis, of New Orleans, for appellant.

Nat. W. Bond, Francis P. Burns, and Walter M. Barnett, Jr., all of New Orleans, for appellee.

Legier, McEnerny & Waguespack, of New Orleans, for intervener.

JANVIER, Judge.

This is a suit in jactitation, plaintiff, Faunce, asserting that the city of New Orleans is slandering the title to his property, by claiming that it encroaches upon a public street. By its answer the city of New Orleans converts the matter into a petitory action and seeks judgment upholding its contention that the property claimed by Faunce is, in fact, a part of Peoples avenue to the extent set forth in the answer.

Wellrick Realty Company intervenes, and, aligning itself with the city of New Orleans, asserts that Faunce encroaches upon the public street on which the property of intervener fronts, and alleges that the property referred to was purchased from Andrew Fitzpatrick and Nicholas C. Cromwell, who had bought from Dennis Sheen by a deed which, it is claimed, contains a legal recognition by Sheen of the fact that the street in question had been dedicated to public use.

It is argued that, since Faunce also claims his title through Sheen, the common ancestor in title, he cannot be heard to say that there was no such recognition of the fact that there had been a sufficient dedication to make the said street permanently public property.

In the district court there was judgment as prayed for by the city of New Orleans, and Faunce has appealed.

The chain of title to the property in controversy is not in dispute, but the bone of contention is whether or not there has ever been a dedication to public use of Peoples avenue, which Faunce contends has never had existence either in physical reality or by dedication, and which the city of New Orleans maintains has for many years been public property by reason of dedication generations ago by the then owner or owners and confirmed and ratified since by the owners of adjacent properties.

The real question is whether there is or is not a so called "Peoples avenue" crossing what is presently known as Gentilly road, and extending along the western bank of the drainage canal known as Peoples or Peoples Avenue canal.

In 1845 a large tract of land which had been acquired by the Hopkins family by original grants, and which was then known as the Hopkins plantation, was purchased by Charles W. Hopkins. At that time it was divided into two portions by Bayou Sauvage, and Gentilly road which was located along the bank of the said bayou. The bayou and the road extended in a general easterly and westerly direction.

There is evidence which tends to show that, during or about the year 1872, the city of New Orleans caused to be dug a drainage canal known, apparently then as now, as the Peoples or Peoples Avenue canal. This canal crossed Bayou Sauvage and Gentilly road very nearly at right angles and ran in a general northerly and southerly direction, and also divided the Hopkins plantation so that the drainage canal and Bayou Sauvage divided the tract of land into four large, although unequal, sections. At that time, as we shall hereafter show, there was in existence a map made by one D'Hemecourt—though it is not shown that that map was in any way official—showing the strip of land, on which the canal was dug, as a public street. When the city authorities by digging the canal thus appropriated to public use property which, so far as the records showed, was privately owned, the acquiescence therein by the private owners may not of itself have constituted a dedication, but it indicated that there was some intention on their part not to interfere with the city's plan to make of the appropriated land public property. Of course, it is not this acquiescence which is

relied on by the city as a dedication, but it is maintained that from this beginning the other acts to which we shall hereafter refer as having been performed by the subsequent owners cumulated in evidencing a clear and unambiguous intention of the later owners to dedicate.

In 1881 the city of New Orleans authorized the New Orleans & Northeastern Railroad Company to locate, construct, and operate a railroad line into the city, and granted to that company permission to deepen the Peoples or Peoples Avenue canal and to use the earth so removed as a foundation for its tracks along the said canal.

We find in the record nothing to show that there was objection on the part of the owners of the adjacent property to the action of the city in thus granting a railroad right of way over the said strip of land, and this acquiescence in the action of the city in disposing of the right to the use of a portion of the strip, unobjected to by those who might have claimed to be the owners, further evidenced an intention to permit the property to be dedicated to such public use as a city may be permitted to make of its streets.

When Hopkins died, his succession was duly opened, and, after proper proceedings, there was judgment ordering the sale of the said plantation. In carrying out the order for the sale to effect a partition among the heirs, some, at least, of whom were minors, the property was divided into five unequal portions. Lots 1, 2, 3, and 4 formed the four contiguous corners, each having a frontage on the road located along Bayou Sauvage known as Gentilly road and each also having a frontage on the Peoples or Peoples Avenue canal. The lot numbered 5 was adjacent to lot No. 2, but was not adjacent to any of the others.

The plan, according to which the said property was divided into five parts, was made by John F. Braun, and was dated May 15, 1886, and on it there was set forth an open strip of land running in a northerly and southerly direction, separating lot 2 from lot 4 and lot 1 from lot 3, and on this strip were shown the lines of the New Orleans & Northeastern Railroad Company tracks, and, though no measurements of the width of that strip appeared on that plan, there was apparently a width considerably greater than was necessary for the tracks of the railroad. The drainage canal was not shown on that plan.

At the partition sale one Dietz bought lot No. 1, which was the northeasterly lot. We are not concerned to any great extent with that lot.

Dennis Sheen became the purchaser of lots 2, 3, and 4, and with lots 2 and 4 we are much concerned.

Lot 5 was bought by George Denegre, as attorney for the Louisville & Nashville Railroad Company.

We may focus our attention upon lots 2 and 4. Lot 4 is south of Bayou Sauvage and east of the open strip referred to as being shown on the Braun plan. Lot 2 is south of Bayou Sauvage and west of the said open strip. Lots 2 and 4 are thus contiguous, except that they are separated by the open strip between them. It is this open strip which forms the basis of the contention now before us, the city of New Orleans contending that it is a public street, two hundred feet in width, and Faunce maintaining that it has never been dedicated as a street; that it is much narrower than two hundred feet, and that on it are located only the tracks of the railroad and the canal, and that private ownership commences at the water's edge on the west bank of the canal, and that there is no open strip of land between the canal and the boundary of lot No. 2.

Prior to the partition sale in the Hopkins succession there was nothing except those suspicions of dedication to which we have referred which can be now pointed to by the city as constituting a dedication to public use of what is now claimed as Peoples avenue, though by constructing the drainage canal thereon and by granting to the railroad company the right of way thereon, the city apparently treated the said strip as though under its control.

Whether the sale in the succession of Hopkins, which was made according to a plan which showed an open space not designated as a street and not otherwise shown to be dedicated to public use, can be considered as the dedication of that strip, is an interesting question which is further complicated by the fact that some of the Hopkins heirs were minors. If the city rested its case upon that plan and upon the fact that sales were made according to it, it might have a weak case, because it is extremely doubtful if minors' rights may be alienated by such a dedication, and it is also doubtful if even majors can be said to have made a dedication where the intention is so uncertainly shown. But we pass beyond that plan and direct our attention to the subsequent acts of Dennis Sheen who, it will be remembered, bought both lots 2 and 4 shown on the Braun plan, and who, since these two lots were adjacent, owned the intervening open space, if that space had not been dedicated to public use prior to Sheen's acquisition.

Faunce cannot be heard to controvert this statement, because he bases his title entirely on his contention that Sheen did own this intervening strip, and his title is derived directly, if he has any title at all, from Sheen.

On December 31, 1891, Sheen, who, at that time, was the owner of lots 2 and 4, and Seegers, who had become the owner of lot

No. 3, appeared before a notary public, and in a public act declared that, since the Braun plan under which they had purchased did not show the width of the right of way of the New Orleans & Northeastern Railroad Company, which was a part of the open strip to which we have referred, Geo. H. Grandjean, civil engineer and deputy city surveyor, had, in 1886, been employed by Sheen and the New Orleans & Northeastern Railroad Company to make a detailed survey and sketch of the property purchased by Sheen, and that the said sketch of that survey was attached to the said public act in order that it might be perpetuated.

That notarial act was duly registered in the conveyance records of the parish, and the pertinent recitals thereof are as follows:

"Whereas, the said plan of Braun of May 5, 1886, while designating the right-of-way of the New Orleans & Northeastern Railroad, along, by, over, and through the said property of the Hopkins Heirs, failed to specify in figures the exact width of said right-of-way as dedicated by the sale of the said Hopkins Heirs according to said plan of Braun of May 5, 1886; and,

"Whereas, the said Dennis Sheen, in order to fix the exact lines, boundaries, and width of said right-of-way, did, on the thirty-first of August, 1886, cause a survey and plan of said Hopkins property thus purchased by him, to be made by George H. Grandjean, Civil Engineer and Deputy City Surveyor, on the 31st of August, 1886:

"Now, therefore, the said Dennis Sheen and Gustave Seeghers by these presents declare that said survey and plan of said Grandjean, of August 31, 1886, is a correct survey and plan under which they acquired the whole of the property aforesaid, and as described by the metes and measurements and bounds therein, and that the same shows correctly the lines, dimensions, and the right-of-way of the New Orleans & Northeastern Railroad by, along, over, and through the aforesaid property as purchased from said Hopkins Heirs, and they deposit said plan herewith in this notarial form for record and perpetuation.

"And I, Notary, annex it to this act after having paraphed it to further identify it herewith."

The Grandjean plan referred to in the act shows that Peoples avenue is two hundred feet in width, and that along the east side thereof are the tracks of the New Orleans & Northeastern Railroad; that near the center is the "draining canal" shown to be sixty feet wide, and that along the edge is an open space between the bank of the canal and the eastern boundary of lot No. 2.

Sheen retained lot No. 4 until 1907, at which time he sold it to Andrew Fitzpatrick and Nicholas C. Cromwell, who later sold to intervener, and he retained lot No. 2, until 1909, two years after the sale of lot No. 4, at which time he sold said lot No. 2 to the Edgewood Improvement Association, through which association Faunce now claims title.

When Sheen sold lot No. 4 to Fitzpatrick and Cromwell in 1907, he attached to that act of sale another sketch made by Grandjean in 1894, which is practically a duplicate of the sketch based on the survey of 1886, and in this later sketch Peoples avenue is again shown—though the width thereof is not given—as containing open property along its western edge in addition to the canal and in addition to the right of way of the railroad.

Now, as we have said, Faunce derived his title from Edgewood Improvement Association, and that association purchased the lot known as lot No. 2 from Sheen in 1909, and, in that act of purchase from Sheen to the Edgewood Improvement Association, reference was again made to the Grandjean survey and the sketch thereof, and the lot (2) was sold as designated on that plan, and there would be no controversy before us today if the recitals of that act had not also contained reference to another plan which was made by Warren B. Reed and which bore the date of April 29, 1909.

Reed's plan makes no reference to Peoples avenue, and shows only what seems to be a railroad right of way and also a canal, but shows no land on the west bank of the canal between the water's edge and the boundary of lot No. 2.

Shortly after it acquired lot No. 2, the Edgewood Improvement Association prepared a plan on which the whole of lot No. 2 was subdivided into squares and streets, and, on this plan, alongside the canal is shown a narrow strip of land designated as Primrose walk.

Primrose walk is not wide enough to accommodate the original dimensions which the city claims Peoples avenue is entitled to, and, if the city is correct in its contention that Peoples avenue was formally dedicated to public use, then each of those property owners whose lots are located along the west side of Primrose walk must give up a strip of ground fourteen feet six inches in width, so that Peoples avenue may regain the width to which the city claims it is entitled.

We have not thought it necessary to do more than make passing reference to the very interesting, though most idealistic, sketch or plan made many years ago by a most competent surveyor D'Hemecourt. Work on the preparation of D'Hemecourt's plan commenced prior to the Civil War, and on it are shown many streets and avenues which in fact, it is conceded, have never existed. Counsel for Faunce attacks this plan, charging that it is purely idealistic, and that the streets shown thereon, including Peoples avenue, were never dedicated

and were never laid out, and, in fact, that that map in many respects represents merely the conception of the surveyor as to what would have been proper and convenient in the future development of the city.

But counsel overlooks the fact that the city does not base its claim that there has been a dedication on that or other similar maps, but can rest its case upon the apparent recognition of the Hopkins heirs of the existence of Peoples avenue and upon the fact that, subsequently, such dedication as may have previously been made was ratified by Dennis Sheen who later owned the two contiguous tracts.

The city further shows that later the Edgewood Improvement Association sold a portion of lot No. 2 to a Mrs. McCloskey and in that sale acknowledged the existence of Peoples avenue by stating that the property sold to Mrs. McCloskey was a piece of land "fronting on Peoples Avenue."

It is also shown that Dennis Sheen, while he was the owner of lot No. 2, granted a right of way to the Louisville & Nashville Railroad, and in that grant recognized the existence of Peoples avenue, and that attached to that grant was a plan on which Peoples avenue was shown as located almost exactly as the city contends it should be. This is pointed to as a further recognition by Sheen of the fact that Peoples avenue is and was "locus publicus."

Most interesting of all, we find that Mr. Frank H. Waddill, a surveyor of great renown, recently made a survey in which he found the pre-existing monuments left by Mr. Grandjean when he made his survey in 1886, and that, when Mr. Waddill made his subsequent surveys and actual measurements, he found that between the eastern and the western boundaries of lots 2 and 4 of the original Hopkins plantation there was sufficient ground to satisfy the title of lot No. 2 and the title of lot No. 4, and to leave a strip sufficiently wide for the street shown on Grandjean's plan as being two hundred feet in width and known as Peoples avenue. Thus, if Faunce is successful, there will have been in the lot No. 2 sold to Edgewood Improvement Association more than the frontage called for, but there will have been in the street less than the Grandjean plan showed.

We are also impressed with the fact that another engineer, Mr. Sutch, also measured the frontage of lots 2 and 4 on Gentilly road and found that there was sufficient property between the western boundary of lot 2 and the eastern boundary of lot 4 to accommodate both titles and to leave a two hundred foot street.

■ Our own conclusion is that there was unquestionably a dedication to public use of a street, two hundred feet wide, known as Peoples avenue, and that whether this dedi-

cation had taken place prior to the acquisition of Mr. Sheen is of no great importance because the action of Mr. Sheen in selling lot No. 4, according to a sketch showing that the street was adjacent thereto, itself constituted an irrevocable dedication and later prevented acquisition by any one claiming through the titles of Sheen of any portion of that street.

■ In order that there be a dedication to public use, it is not necessary that there be a deed in any particular form or containing any particular recital; all that is required is that the intention to dedicate be manifest, and that property be sold or purchased in reliance upon the said dedication.

In Anderson v. Thomas, 166 La. 512, 117 So. 573, 579, our Supreme Court said: "No particular form of deed, or deed at all, is necessary for the dedication of land to the public; it suffices that the owner permits the land to be used by the public with the intention of making the dedication. Dedications to public use, and servitudes in favor of the public, are not governed by the strict rules which apply to private property; the visible signs of dedication and open use of the property by the public supply the space of both title and registry. Eggerson v. Ancar, 6 Orl. App. 417, approved by this court October 13, 1909. See, also, City of New Orleans v. Carrollton Land Company, 131 La. 1092, 60 So. 695."

In Flournoy v. Breard, 116 La. 230, 40 So. 684, 686, is found the following: " * * * It has been repeatedly decided that an owner who sells property bounded by his own land which he refers to as a public street is bound by that declaration. It has been often held that by thus establishing a boundary it is an evidence of his intention to dedicate the street to public use."

See, also, Jaenke v. Taylor, 160 La. 109, 106 So. 711; Calhoun v. Town of Colfax, 105 La. 416, 29 So. 887; Iseringhausen v. Larcade et al., 147 La. 515, 85 So. 224, and Land v. Smith et al., 44 La. Ann. 931, 11 So. 577.

■ The above cases are authority for the principle that, where one divides his property into lots or squares and sells them according to a plan which shows streets or other portions designated as streets, he cannot thereafter revoke the dedication and repossess privately the property dedicated. There may be cases in which, where no one has acted in reliance upon such plan of subdivision, owners have been permitted to recall what would have amounted to a dedication if action had been had thereon; for instance, if a municipality had not accepted the dedication formally and no sales based on such dedications had been made, but wherever there has been a sale the dedication becomes irrevocable, as we have already said.

In Leland University v. City of New Or-

leans, 47 La. Ann. 100, 16 So. 653, 655, the court quoted with approval from Dillon on Municipal Corporations, as follows: "While a mere survey of land by the owner into lots, defining streets, squares, etc., will not, without a sale, amount to a dedication, yet a sale of lots with reference to such a plat, when bounded by streets, will amount to an immediate and irrevocable dedication of the latter, binding on both the vendor and vendee."

■ Counsel for Faunce, apparently conceding the soundness of the doctrine which we have just discussed, maintains that it has no application here, because Peoples avenue, if there was a Peoples avenue, and he maintains there was not, was not immediately adjacent to the property which was sold to Fitzpatrick and Cromwell, but was separated therefrom by the drainage canal and also by the right of way of the railroad.

We do not agree with him in this, because, apparently, both the right of way and the drainage canal are located on or in the avenue itself, and furthermore, even if they are not and even if they do separate the property sold to Fitzpatrick and Cromwell from Peoples avenue itself, nevertheless, who can say that, when Fitzpatrick and Cromwell bought lot No. 4, they were not influenced by the fact that according to the plan the said avenue existed and might, in the future, give great value to the property which they bought. It must be remembered that the tract purchased by them was very extensive, and it may be that it would be of considerable importance in planning a subdivision to have a road running along the property for its entire depth, which would be opened and made available to prospective purchasers of their property.

We think that, since the lot was sold according to the plan which showed Peoples avenue, there was a dedication of that avenue.

■ We do not mean to say that some of the other acts and things relied upon by the city do not also show that the street was dedicated to public use, but we find it unnecessary to consider these contentions in details, because it is of no importance that property dedicated be shown to have been also dedicated by prior owners. If it be shown that persons who, but for possible prior dedications, would themselves have been the owners, have themselves dedicated, then the prior dedications are of no importance.

■ It cannot be said that the failure of the city during many years to improve the said street, or, in fact, to open it to the public for actual use as a street—and we do not know from the record whether, prior to the opening of Primose walk, Peoples avenue itself was opened as a street—has in any way affected the original dedication.

■ It there was, at any time, a dedication,

no one thereafter could, by prescription, acquire title to the property. In City of New Orleans v. Carrollton Land Company, 131 La. 1092, 60 So. 695, 696, in which the municipality claimed that dedication to public use of a certain "square" had resulted from a plan of subdivision made by the owners of McCarthy plantation, which is now Carrollton, those in physical possession of the square resisted the city's attempt to devote it to public use. The Supreme Court, after considering the plea of prescription, said: "If the position of the city in this suit be sustained, to the effect that the property in question is a public square, defendant cannot have acquired title thereto by prescription or otherwise. Municipality No. 2 v. Orleans Cotton Press, 18 La. 272, 36 Am. Dec. 624; Mayor, etc., of Thibodeaux v. Maggioli, 4 La. Ann. 73; City of Shreveport v. Frank C. Walpole, 22 La. Ann. 526; Town of Vinton v. Lyons, 131 La. 673, 60 So. 54; 3 McQuillin, Municipal Corporations, § 1158."

In another case in which property had been dedicated for public use as a street, but never actually opened to the public, the city attempted to remove the fences placed across the street by the claimant of the land inclosed within the fences, and was met with the contention that, even if there had been a dedication, no actual use had ever been made of the property. The court said: "The founders of this town, when they caused this plan of the Macarty plantation to be made, dividing it into squares or portions of land, numbered and bounded by streets and avenues, and offered it at auction to the public, clearly intended to give it the character and destination of suburban property. No one holding squares and pieces of ground described in his title with reference to this plan, which has been the subject of legislative recognition, can consistently with his own title, the manifest intention of his authors, and the rights of other citizens who have bought on the faith of the same declared intention and appropriation, dispute the public character of that portion of the land so reserved for streets and avenues, whenever the corporation of Carrollton shall consider the proper time has arrived for having them opened. The plaintiff must be considered as having bought his property with reference to this ultimate exercise of power, and is entirely unsupported in his pretension that by the sufferance of the municipal council, that he should enclose the lands, while the public convenience did not require the opening of the designated streets, he could thereby acquire a right in the soil which he never purchased, and which on the contrary was excluded from his ownership, by the term of his deed." Victor Burthe v. Blake et al., 9 La. Ann. 244.

■ The intervention of the Wellrick Realty Company is of interest, because, since

that company is one of those subsequent owners whose titles, with that of Faunce, are derived from the common ancestor, Sheen, who had one time owned the two contiguous tracts as a part of one entire block of land which he had purchased, in one of which contiguous tracts is situated intervener's land and in the other of which is that of Faunce, it focuses our attention on the principle of law which is set forth in Civil Code, article 768, and which is familiarly known as the "Destination Du Pere De Famille." If the so called "Pere De Famille" at one time owns an entire tract and sells one part to one purchaser with recognition of a continuous apparent servitude over a part of the remainder of the tract, there comes into existence the "Destination Du Pere De Famille," which later prevents either the original owner of the entire tract or any of the subsequent owners who may purchase from him from attempting to abolish the right created by the "Destination."

We do not know here whether, in addition to the plans of survey, there was anything to show a continuous apparent servitude on Peoples avenue, but we cite the principle because it is based on the same doctrine of estoppel which we have heretofore discussed. As illustrative of the principle, see Barton v. Kirkman, 5 Rob. 16; Roy v. Roy, 5 La. Ann. 590; Taylor v. Boulware, 35 La. Ann. 469; Woodcock v. Baldwin, 51 La. Ann. 989, 26 So. 46, and for a most interesting discussion see Gottschalk v. De Santos, 12 La. Ann. 473.

Counsel for Faunce calls to our attention four cases: City of Shreveport v. Drouin, 41 La. Ann. 867, 6 So. 656; De Grilleau et al. v. Frawley et al., 48 La. Ann. 190, 19 So. 151, 156; City of Alexandria v. Thigpen, 120 La. 293, 45 So. 253; Quirk v. Miller, 129 La. 1071, 57 So. 521. We believe that each can be distinguished.

Asserting that when Sheen sold to Fitzpatrick and Cromwell according to the Grandjean plan, if he thereby made a dedication of Peoples avenue, he later revoked it by selling lot No. 2 to the Edgewood Improvement Association in accordance with the Warren B. Reed plan which did not show that street, counsel for Faunce especially calls to our attention City of Alexandria v. Thigpen, supra, and he points out the following from the syllabus of that decision: "Where a suburban tract of land, after having been platted as a subdivision, was sold as a whole by metes and bounds, a reference to the plat attached to the deed will be considered as made for the purpose of description, and not for the purpose of dedication."

There it appears that an owner of a large tract of land had it surveyed and made of it a theoretical subdivision showing on the plan streets, etc., but no sales were made according to that plan and the owner later sold the entire property. It was held that there had been no dedication to public use of the particular street in question. The court said: "The map was never recorded, and Mrs. Day made no sale with reference to it."

The court further found that no clear intention to dedicate could be found in Mrs. Day's action, and reached the conclusion that, "where there is so much doubt, the intent to dedicate cannot be inferred."

In the case at bar we feel that, not only was there a clear intention to dedicate, but that the plain distinction between this case and that from which we have just quoted is that here the property was not sold as a whole, and that one portion was sold to one group of purchasers, and in that sale the intention to dedicate appeared, thus resulting in the estoppel which prevents claim of private ownership now being made.

Nor can Faunce derive any comfort from Quirk v. Miller, supra. There, true enough, a landowner, apparently with the intention of sponsoring at some future day a subdivision or a town annex, made a sketch of his property, and on it caused to be shown certain streets, but he never recorded the sketch, and he made no sales according to it, and the town at no time accepted the streets which were claimed to have been dedicated. Naturally enough it was held that there had been no dedication. The necessary element was lacking. There was nothing done which could create an estoppel.

In City of Shreveport v. Drouin, supra, there was nothing on the plans relied on which showed a clear intention to dedicate certain property as alleys. The court found that the sketches were in themselves ambiguous, and that, since neither in them nor elsewhere was such intent shown, there had been no dedication.

In De Grilleau et al. v. Frawley et al., supra, the court was confronted with the necessity of distinguishing between a private alley and a public one, and the court held: "We are of the opinion, from the language used in the deeds and their evident purpose, that only private rights inter partes were intended to be created and recognized. The vendor did not, in terms, convey the property of the alley to his different vendees, but for all practical purposes they had qualified property rights in it (Delogny's Heirs v. Mercer, 43 La. Ann. 212, 8 So. 903), but rights in which no one other than themselves were concerned. We know of no reasons why, immediately after the sales here made, these parties could not have all met together, and by unanimous consent and arrangements entirely done away with the alley; nor any reason why, by common consent, they could not have closed the entrance to and exit from the alley by gates. If they did not do the latter, it was doubtless because of the in-

conveniences attendant upon opening and shutting them."

Surely this case in no way bears upon the question of dedication to general public use.

We conclude that Faunce is without title to the part of the property which is in controversy; consequently, and for the reasons herein assigned, the judgment appealed from is affirmed.

Affirmed.