### SLIMAN v. MAYOR AND BOARD OF ALDERMEN OF VILLAGE OF PALMETTO.
### No. 1096.

Court of Appeal of Louisiana, First Circuit.
Jan. 24, 1933.

W. C. Perrault, of Opelousas, for appellant.

Lewis & Lewis, of Opelousas, for appellee.

### MOUTON, J.

Plaintiff sued out an injunction against the defendant village claiming that it was attempting to gravel a strip of land as a public street, called School street, which belonged to him as part of a tract of land purchased by him from Martin S. Hatfield.

The preliminary injunction granted to plaintiff was dissolved with attorney's fees. On appeal to this court, the judgment was reversed, and the case was remanded for trial on the merits. 142 So. 846.

Judgment was rendered on the merits dismissing the suit, from which plaintiff prosecutes the present appeal.

In October, 1901, James E. Hatfield and his brother, Martin S. Hatfield, bought from Preval Redeau 57 acres of land situated at Palmetto, parish of St. Landry. James E. Hatfield died in 1903, and his estate, including his interest in that tract of land, was inherited by Martin S. Hatfield and his sister, Miss Mary Hatfield, his sole heirs. In January, 1904, Martin S. Hatfield and Miss Mary Hatfield, by authentic act passed before G. W. Hawkins, notary public, made a partition of the land so inherited from their deceased brother, James E. Hatfield.

In the act of partition it is stated that Martin S. Hatfield accepts as his portion of the estate a certain number of lots as per plat annexed to the partition; and a similar declaration is made for Miss Mary Hatfield for the lots taken as her portion, as per plat annexed to the partition.

Mrs. Chas. Dupre, deputy clerk of Henry Lastrappes, clerk of court of St. Landry parish, testifies that the plat or map of this "Hatfield partition deed" had, on a former trial, been missing from the clerk's office; that it was brought back to the office, and to

preserve the map she took it out of the act and pasted it in the map book.

Roy Edwards, an abstracter of St. Landry for many years, says that he was familiar with the act of partition effected in 1904 between Martin and Mary Hatfield, and knew of the map which had been attached to the act; that, in connection with an abstract of title, he had made a copy of that map. He says that the map filed in the map book is the "very same map" which he found attached to the act of partition. He said, further, that he had brought the map back to the clerk's office so that it might be filed in the map book for future preservation.

Martin Hatfield, who with Mary Hatfield had made the partition, testifies that he assisted Hawkins in making the survey of the lots and saw when Hawkins made the map. He says the map was attached to the partition, and it was the one in the map book.

The act of partition declares that the map was annexed thereto, and that it was so attached is confirmed by the testimony of Martin Hatfield, who was present at the survey, and of Mrs. Dupre and Roy Edwards.

In the copy of the map made by Mrs. Dupre, she states that the original map was glued in the map book, which could not be removed; hence the necessity of the copy in lieu thereof.

The district judge, B. H. Pavy, testifies that he is familiar with the handwriting and signature of G. T. Hawkins, now deceased. He testifies that the act of partition and the map are in the handwriting of G. T. Hawkins.

In a marginal note to the map or plat in the copy, verified by Mrs. Dupre, deputy clerk, we find the following: This plat with attached act of partition. G. T. Hawkins, Not. Pub. This notation by Hawkins, the declaration in the act of partition, and the testimony of Martin Hatfield, Mrs. Charles Dupre, and Roy Edwards, make it quite certain that the map was attached to the act of partition. It is established with equal certainty by the testimony of Martin Hatfield that the map in the map book was the one which had been made by Hawkins after the survey; and it is shown that both the act and the map were in the handwriting of Hawkins, as testified to by Judge Pavy.

Counsel for plaintiff contends that the map is spurious. Obviously the trial judge found that it is genuine, and we are unable to find from this record any error in this finding of the court.

Counsel for defendant refers us to the case of City of New Orleans v. Carrollton Land Company, 131 La. 1092, 60 So. 695, 697, where the court said that "no deed or act of conveyance is necessary to dedicate land or rights in immovable property to the public." Also to other cases where it is held that acceptance of the dedication may be inferred from public use, such as the public wants and necessities demand. A large number of decisions are referred to by the court in those cases in support of that rule which is so well established that no further comment thereon is necessary.

In the City of New Orleans v. Carrollton Land Co. Case, above cited, the court said also that: "There can be no doubt that under our jurisprudence the word 'street' written by the owner on a strip of ground running through such plat, where sales are made from it, effectively dedicates said strip to the public as a street."

The word "street" or "streets" is not written on the map in question herein over the vacant spaces or strips, which, however, run east, west, north, and south through the plat. If these spaces had been designated as streets by the owners on the "strips of ground running through the plat," there would have been an effective dedication, as was held in the Carrollton Case.

Counsel for plaintiff refers to the fact that "School Street" is not written on the map, and contends, if we have a correct appreciation of his argument, that there was therefore no dedication of that street. It is shown that Mary Hatfield, who had made a partition with Martin Hatfield of the land inherited from their deceased brother, James E. Hatfield, left Winston Stokes as her sole heir. Winston Stokes, being a minor, Thomas Stokes, his natural tutor, made a sale to the plaintiff, Alexander Sliman, of a number of the lots Winston had inherited from his mother, Mary Hatfield.

In designating the lots sold to Sliman and in referring thereto, the deed to Sliman declares as follows: "All of the Hatfield Addition of the Village of Palmetto, St. Landry Parish, La., * * * Said lots being fully shown and designated on a plat of survey of said Hatfield Addition * * * being annexed to an act of partition had between the said Mary Hatfield, deceased, and Martin S. Hatfield on January 21, 1904, and duly recorded."

In the foregoing declaration by the vendor, there can be no doubt that the map of the Hatfield addition made by Hawkins was fully recognized by the vendor. Further in the deed, in referring to a strip of ground 40 feet wide which ran through the addition, the act says: To School street on the south; and then again says: This 40-foot strip is bounded as follows: "North by property of purchaser * * * south by public street."

In the case of Flournoy v. Breard, 116 La. 230, 40 So. 684, 686, the court said: "Moreover, it has been repeatedly decided that an owner who sells property bounded by his own land which he refers to as a public street is bound by that declaration. It has been often

held that by thus establishing a boundary it is an evidence of his intention to dedicate the street to public use."

It is evident that in making such a declaration the vendor intends to divest himself of the ownership of the land in the street referred to, and could not possibly, at the same time, transfer title thereto to his vendee.

In Cincinnati v. White, 6 Pet. 431, 439, 8 L. Ed. 452, the rule governing the dedication of land is stated in the following language: "There is no particular form or ceremony necessary in the dedication of land to public use. All that is required is the assent of the owner of the land, and the fact of its being used for the public purposes intended by the appropriation."

This doctrine was adopted in the case of the City of Baton Rouge v. T. J. Bird, Sheriff, 21 La. Ann. 244, in which prior decisions are cited.

In Paulina Pickett v. Wm. Brown et al., 18 La. Ann. page 560, the court had this to say: "There is no particular form necessary to a dedication of land to public use. All that is required is the assent of the owner of the land, and the fact of its being used for the purposes intended."

There can be no doubt that Winston Stokes in his sale to Sliman, plaintiff, in referring to the plat in question of the Hatfield addition, and by giving School street as the boundary line of the 40-foot strip mentioned in the deed, recognized the dedication of the strip in question as being School street, which had been dedicated as such in the act of partition effected between Mary and Martin Hatfield. It also appears that Martin Hatfield made a sale of property bounded on the south by School street; and, not only this, but that he assisted Hawkins in making the survey which resulted in the plan attached to the partition; and that he never contested, nor intended to contest, the binding effect of the dedication of School street to the village of Palmetto.

It is clearly shown that the strip in contest has been used as a public street since its dedication was effected in the partition of the land between Mary Hatfield and Martin Hatfield in 1904. Hence it is well established that it was used for the purpose intended, and that there was a valid dedication.

Counsel for plaintiff contends that the plat in this case does not conform to the requirements of Act No. 134 of 1896, and that, being faulty in that respect, there could have been no dedication of School street.

In the case of Metairie Park, Inc., v. Currie, 168 La. 588, 122 So. 859, 862, in which a question of dedication was involved, the court in the course of the opinion had this to say: "Defendant seems to contend that the owner of the subdivision is required by Act [No.] 134 of 1896 to imprint upon the map a formal act of dedication."

Further on the court says: "The title to the lot purchased is not affected by failure to observe this requirement of the statute, and, as the streets are shown and named in the Zander plan, they become dedicated to public use as soon as a lot is sold in accordance with the plan."

In this case, as before remarked, there are no streets named in the plan, as was on the plat in the case above cited. The dedication of the street was, however, effected by the plan attached to the partition and its subsequent recognition by Winston Stokes in his sale to plaintiff and by the other sale of land executed by Martin Hatfield. The title of the street which passed to the defendant village could not be affected by the failure of imprinting on the map the formal requirements embodied in the provisions of Act No. 134 of 1896.

We find that there was a dedication of the strip of land in question as School street, and that the claim of plaintiff for its ownership was correctly denied.

Judgment affirmed.