200 So.2d 107 (1967)
Lucia B. BANTA et al.,
v.
The FEDERAL LAND BANK OF NEW ORLEANS et al.
No. 7059.
Court of Appeal of Louisiana, First Circuit.
May 29, 1967.
Rehearing Denied June 30, 1967.
*108 Alex P. Allain, Jeanerette, Ronald Labbe, St. Martinville, for appellants.
Robert M. Fleming, of Bauer, Darnall, Fleming & McNulty, Franklin, for appellees.
Before LANDRY, ELLIS and BAILES, JJ.
ELLIS, Judge.
In 1911, The Adeline Sugar Factory Co., Ltd. caused to be surveyed and platted into tracts, varying from about 40 acres to over 100 acres in size, a large tract of land situated in St. Mary Parish. The plat of survey, which was made by V. E. Smith, and dated February, 1911, was shortly thereafter filed for record. On the face thereof, appears the following inscription:
"This map represents a survey and subdivision of that portion of the property of The Adeline Sugar Factory Co., Ltd., situated in the Parish of St. Mary, Louisiana, indicated on said map and according to which the property is to be sold. The public roads laid out and reserved upon said property as indicated and shown on said map, while reserved for the benefit of the purchasers, ourselves, and the public, shall at all times be subject to the right in The Adeline Sugar Factory Co., Ltd. or its successors and assigns, to use same for building and operating standard or narrow gauge railroads along any or all of said roads, the said dedication being with reservation of the right in The Adeline Sugar Factory Co., Ltd., to build railroads along same as herein provided for, or operate those now constructed.
 "The Adeline Sugar
 Factory Co., Ltd.
 "per B. A. Oxnard,
 President"
Lots 46 and 47 of the said subdivision, which contain 73.55 and 86.60 acres, respectively, were sold by Adeline, and the ownership descended by various conveyances *109 to The Federal Land Bank of New Orleans, which acquired same in 1929. On October 30, 1935, the Bank sold the said lots, reserving in the deed an undivided one half of the mineral rights to the said property. Subject to that reservation, the property descended by a regular chain of title to plaintiffs herein.
The instant suit, a possessory action, was brought by plaintiffs against the Bank and Kerr-McGee Oil Industries, Inc., assignee of a lease covering the said mineral rights, asking to be quieted in the possession of all of the mineral rights lying South of a certain strip of land which traverses lots 46 and 47. The defendants reconvened, asking to be quieted in the possession of an undivided one half of the minerals lying South of the said strip.
In their petition, plaintiffs contend that the strip is a dedicated public road by virtue of the recordation of the plat hereinabove referred to, and that ownership thereof is vested in the Parish of St. Mary. They further contend that because of this fact, the South portion of the lots is non-contiguous to the North portion thereof; and that there having been no use, development or exploitation of the minerals South of the strip, the reservation of the mineral servitude in 1935 expired by reason of non-use in 1945.
On the trial of the case, virtually all of the facts were stipulated by the parties, and the only dispute is as to whether or not the ownership of the strip of ground traversing lots 46 and 47 is vested in the public or in the plaintiffs. The trial court found that there was no intention on the part of Adeline to dedicate that strip to the public, that ownership therein was vested in plaintiffs, and that the South portion of the two lots was, therefore, contiguous to the North portion, on which there had been sufficient mineral development to maintain the servitude in existence. From a judgment quieting defendants in their possession of an undivided one half of the minerals in the Southerly portions of the lots, plaintiffs have prosecuted this devolutive appeal.
Both parties concede that, if the strip of land should be found to be a dedicated public road, with title vested in the public, defendants would have no interest in the minerals south of the strip. Goree v. Mid-States Oil Corporation, 205 La. 988, 18 So. 2d 591 (1944).
Our courts have held, when dealing with subdivisions created prior to the enactment of Act 134 of 1896, that the sale of lots in accordance with a plat of subdivision constituted an irrevocable dedication to the public of the streets shown thereon. Flournoy v. Breard, 116 La. 224, 40 So. 684 (1906); Town of Vinton v. Lyons, 131 La. 673, 60 So. 54 (1912); Jaenke v. Taylor, 160 La. 109, 106 So. 711 (1926); Faunce v. City of New Orleans, 148 So. 57 (La.App.1933); Kemp v. Town of Independence, 156 So. 56 (La.App. 1 Cir. 1934); Richard et al v. City of New Orleans, 195 La. 898, 197 So. 594 (1940).
The rule has also been applied to subdivisions created after 1896, when the provisions of Act 134 of 1896 were either not complied with or not mentioned. Isering-hausen v. Larcade, 147 La. 515, 85 So. 224 (1920); Esposito v. Gaudet et al, 8 So.2d 783 (La.App.1942).
The case of Arkansas-Louisiana Gas Co. v. Parker Oil Co., Inc., 190 La. 957, 183 So. 229 (1938), for the first time declared the doctrine that in Louisiana, "A dedication may be either statutory or according to the common law", citing 18 C.J., Sec. 1, p. 38. That case is also authority for the proposition that a common law dedication confers only a servitude of use on the public; that such a dedication must be accepted in order to be effective; and that a statutory dedication is complete without the necessity of acceptance or use by the public. It further held that substantial compliance with the provisions of the statute was sufficient to complete a statutory dedication.
*110 The implication in that case, if not the direct holding, is that any dedication not made substantially in compliance with the terms of the statutory provisions is a common law or implied dedication, creating only a servitude in favor of the public over the streets, but conferring no ownership therein. The case of Jaenke v. Taylor, supra, which is authority for the proposition for which it is cited above, is found inapplicable because the dedication involved was a "common law dedication made long prior to the adoption of Act 134 of 1896."
The holding in the Arkansas-Louisiana Gas Co. case, supra, was followed to the letter in the case of Parish of Jefferson v. Doody, 167 So.2d 489 (La.App. 4 Cir. 1964) in which the court found no substantial compliance with Act 134 of 1896, and held the dedication to be common law, creating a servitude only. Writs were granted, and in Parish of Jefferson v. Doody, 247 La. 839, 174 So.2d 798 (1965) the Supreme Court reversed the decision. After recognizing the doctrine of the Arkansas-Louisiana case, the Court further found that Act 134 of 1896 carries with it no penalty for failure to comply with its provisions other than the criminal penalties prescribed in the Act, and said the following:
"And this is the realistic and common sense view of the statute. For we can think of no plausible reason for deducing that an owner, who seeks to subdivide and sell his land as a commercial enterprise and has filed a plan in the recorder's office (showing the squares, lots and abutting streets, alleys or walks) under which he proposes to develop the subdivision, has not validly dedicated the streets, alleys and walkways to the public use merely because he has failed to observe detailed requirements which were inserted in the statute solely for the benefit and protection of the land purchasers."
The Court also said:
"It is true that there is no express statement in the dedication of the streets and alleys contained on the plan. But, aside from the fact that a similar omission was found to be insubstantial in Metairie Park v. Currie, it appears to us that implicit in the act of filing of a plan of subdivision in the map book of the parish, showing squares, lots, streets, alleys and walkways, is the intent on the part of the subdivider of dedicating the streets, walks and alleys to the public use. See Richard v. City of New Orleans, 195 La. 898, 197 So. 594."
From all of the above, we gather that the Supreme Court, in effect, has returned to the doctrine of the Flournoy case, supra, and the other cases cited therewith. This is in line with what was done in the Isering-hausen and Esposito cases and in the case of Metairie Park Inc. v. Currie, 168 La. 588, 122 So. 859 (1929).
Turning now to the instant case, we find that the statute in question here is Act 134 of 1896, which provides as follows:
"AN ACT
"To require all persons owning real estate in this State who desire to plat the same into squares or town lots to file in the office of the keeper of notarial records of the parish where the property is situated maps of such proposed towns or tracts of land before selling any part of same, and declaring any violation of this act to be a misdemeanor and providing a penalty for the violations hereof.
 "SECTION 1. Be it enacted
 by the general assembly of the
 State of Louisiana; That
 whenever the owner or owners
 of any real estate situated in
 this State shall desire to lay
 off the same into squares or
 lots with streets or alleys between
 such squares or lots
 and with the intention of selling
 or offering for sale any
 of said squares or lots it shall
 be the duty of such owner or
 owners of such real estate, before
*111
 selling any square or lot
 or any portion of the same, to
 cause to be made and filed in
 the office of the Keeper of
 Notarial Records of the parish
 wherein such property is
 situated and copied into the
 Conveyance Record Book of
 such parish, a correct map of
 the real estate so divided,
 which said map shall contain
 the following:
 "1. The section township and
 range in which such real estate
 lies or subdivision thereof
 according to government survey.
 "2. The number of squares
 by numerals from 1 up, and
 the dimensions of each square
 in feet and inches.
Manner of "3. The number of each lot
making or subdivision of a square and
plats of its dimensions in feet and
town lots inches.
by original "4. The name of each street
owners of and alley its length and width
lands. in feet and inches.
 "5. The name or number of
 each square or plat dedicated
 to public use.
 "6. A certificate of the Parish
 Surveyor of the parish
 wherein the property is situated
 in the correctness of the
 map.
 "7. A formal dedication made
 by the owner or owners of the
 property or their duly authorized
 agent of all the
 streets, alleys and public
 squares or plats shown on the
 map to public use."
The plat which was filed for record in this case satisfies all of the applicable requirements of the above act, except that there are no street names, as required by Section 1(4), and dimensions are not shown for all roads on the map, although given for some. There is no certificate by the parish surveyor shown on the plat as required by Section 1(6). In spite of the above discrepancies, we find that there is a substantial compliance with the technical requirements of the act. See Metairie Park Inc. v. Currie, supra, and Sliman v. Mayor and Board of Aldermen, 145 So. 410, 411 (La.App. 1 Cir. 1933), in which it was held that the above requirements were directory and not mandatory. See also Parish of Jefferson v. Doody, supra.
In ruling in favor of the defendants, the district judge found that the plaintiffs failed to show, by a preponderance of the evidence, that The Adeline Company intended to dedicate the hereinabove described strip to the public. He based his decision on the following findings of fact:
"1. The word `road' does not appear on the strip as it does along the roads shown on the plat.
"2. On the two lots in controversy, 47 and 46, no new numbers have been given to those portions of the lots across the strip as has been done in the other lots traversed by roads. In all of the other cases, ½ has been added to the numbers of the lots across the roads traversing them.
"3. The roads plainly shown on the plat are shown by compass courses and distances but not the strip in dispute.
* * * * * *
"5. A tram road was then in existence along this strip and the strip was therefore shown on the plat only for the purpose of showing the location of this tram road.
"There was a tram road there at the time.
"6. A road at the location of the strip shown was not necessary or desirable as a public road ran parallel to it and near it so that the strip if it were a public road *112 would only duplicate another one already in existence, nor does it lead to any place of consequence."
There can be no doubt that the intention to dedicate must be clearly established. Mecobon, Inc. v. Police Jury of Jefferson Parish, 224 La. 793, 70 So.2d 687 (1954).
Taking the facts of this case into consideration, we find that we are unable to agree with the conclusion of the court below that there was no intention to dedicate evidenced with respect to the particular strip of land in question. The dedicatory language contained on the plat states that the public roads laid out are reserved for the benefit of the public, but subject to the right of Adeline Sugar Factory Co., Ltd. or its successors to build and operate railroads along same, and to operate those railroads now constructed. At every point on the plat where the tramway or railroad is shown to be located, there is a dedicated street and the road runs down the center of same. All of the streets on the map are shown as being between solid lines, as is the strip of land in question. As we interpret the dedicatory language on the plat, Adeline reserved to itself the right to utilize only the roads for the operation of tramways. We feel that these circumstances indicate clearly that it was the intention of Adeline to dedicate the strip of ground to the public to the same extent that it did every other road shown on the plat.
Appellees point out that the language contained in Act 134 of 1896 is intended to apply only to urban property, and has no application to a subdivision such as this one, which is rural in character. They point out that both in the title of the act, and in a gloss appearing in the margin thereof, appears a reference to town lots and that, therefore, the act can apply only to urban property.
We do not feel that the use of the expression "town lots" in the title and marginal gloss of the act has any limiting effect on its application to rural or urban property. According to 87 C.J.S. Towns §§ 1-3, the word town has no fixed legal significance. It may or may not imply incorporation, and in its broad sense is used to designate "an aggregation of houses so near one another that the inhabitants may fairly be said to dwell together." Using the word in the above sense, it is apparent that one may subdivide either rural or urban property into "town lots" and come within the purview of Act 134 of 1896. We might also point out that the word "town" in conjunction with the word "lots" appears only in the title and in the marginal gloss, and is not included in the body of the act, which refers only to "squares or lots", without any further qualification. Further, Section 1 of the act makes it applicable to "any real estate situated in this state."
We cannot agree with appellees' contention that the enactment of Act 80 of 1922, which provides for subdivision into lots of blocks of less than ¼ of an acre each, of any tract outside of the limits of any incorporated town, etc., city, or municipality, in any way indicates an intention on the part of the legislature to limit the application of Act 134 of 1896 to urban areas only.
On the other hand, it appears that the Act of 1896 was not intended to apply to subdivisions into large tracts of land, such as in this case. It certainly could not be said that a 70 or 80 acre tract of land is a "town lot" or a "square" in the ordinarily accepted meaning of those words, and we find that no meaning beyond that was intended by the legislature. If the use of the word "lot" alone in the body of the Act creates any ambiguity, this ambiguity is cleared up by the use of the words "town lots" in the title and marginal gloss. The dedication is not, therefore, of the type contemplated by Act 134 of 1896, and can have no effect as a statutory dedication.
We do not believe, however, that by enacting Act 134 of 1896 as a guide to *113 those desiring to lay out a subdivision in accordance with its terms, the legislature intended to foreclose one desiring to dedicate a different type of subdivision from dedicating the streets or roads to the public if he so desired. We find that the legislature, at the time of the filing of the plat herein, had not attempted to regulate subdivisions into large tracts of land, and that the law relative thereto, as it existed prior to the enactment of Act 134 of 1896, is to be applied to determine the effect of the dedication thereof.
Under that law, as hereinabove set forth, there is clearly an irrevocable dedication to public use, because of the filing for record of the plat and the sale of lots in accordance therewith. The same cases cited also stand for the proposition that no acceptance of such a dedication, either formal or by use, is necessary.
We are therefore of the opinion that title to the strip of land referred to herein vested in the public upon the filing for record of the plat. Since there has never been a revocation of the dedication of the said strip, title remains in the public. That part of Lots 46 and 47 lying South thereof is not contiguous to that part lying to its North. The mineral servitude reserved by The Federal Land Bank of New Orleans, has, therefore, prescribed because of the non-use thereof, and title to the said minerals has reverted to the owners of the lots.
For the above reasons, the judgment of the district court is reversed, and there will be judgment in favor of plaintiffs, Lucia Broussard, widow of Rufus C. Banta; Elizabeth Banta, wife of Clarence Lemaire; and Rodney J. Banta, and against defendants The Federal Land Bank of New Orleans, and Kerr-McGee Oil Industries, Inc., maintaining and quieting plaintiffs in their possession of the mineral rights and royalty rights under that portion of the following described properties lying South of the strip of land traversing same from East to West, as shown on the plat of V. E. Smith referred to in the descriptions:
"1. That certain tract of land lying and being situated in Section 38, Township 13 South, Range 9 East of St. Mary Parish, Louisiana, being a portion of that tract of land designated as Lot 46 on a plat of survey of lands of The Adeline Sugar Factory Co., Ltd., prepared by V. E. Smith, Civil Engineer and Surveyor, dated February, 1911, and which is recorded in Book 3-C, at Folio 261, under Entry No. 39520 of the Conveyance Records of St. Mary Parish, Louisiana, which portion may be described as being bounded as follows: North by the Public Road which traverses and bisects the said lot in an east-west direction; South by Public Road, East by Lot 45 and West by Lot 47.
"2. That certain tract of land lying and being situated in Section 38, Township 13 South, Range 9 East of St. Mary Parish, Louisiana, being a portion of that tract of land designated as Lot 47 on a Plat of Survey of lands of The Adeline Sugar Factory Co., Ltd., prepared by V. E. Smith, Civil Engineer and Surveyor, dated February, 1911, and which is recorded in Book 3-C, at Folio 261, under Entry No. 39520 of the Conveyance Records of St. Mary Parish, Louisiana, which portion may be described with reference to the said plat as being bounded as follows: North by the Public Road which traverses and bisects the said lot in an east-west direction; South by Public Road, East by Public Road and West by Lot 46."
It is further ordered that defendants pay all costs, both in this court and in the court below.
Reversed and rendered.