WARD, Judge.
The heirs of Edwin N. Bisso (“Bissos”) appeal a judgment in favor of Mr. and Mrs. Maurice Brungardt and the City of New Orleans which determined that property the Bisso heirs claim ownership of is a duly dedicated public street. We affirm.
Mr. and Mrs. Maurice Brungardt (“Brun-gardt”) purchased Lot 13 in Square 6 in the Sixth District of the City of New Orleans in 1984. Their title indicates that “Square 6”, an irregular section abutting Audubon Park, is bounded by Front Street, Leake Avenue, Walnut Street and Constance Street. Lot 13 forms the corner of Front Street and Audubon Park and is also bounded by other lots in Square 6.
Subsequent to the Brungardt purchase of Lot 13, that portion of Front Street between Leake Avenue and Audubon Park adjacent to the Brungardts’ property was fenced by the Bissos preventing access to Lot 13. The Brungardts have obtained a building permit but are frustrated in their attempts to build on their property because of its inaccessibility.
The Brungardts sued the City seeking injunctive relief and a judgment declaring Front Street a duly dedicated public street. Their petition was subsequently amended to name as additional defendants the Bis-sos and the Audubon Park Commission (“Commission”). The amended pleadings sought, alternatively, rights of passage either across Audubon Park to Riverside Drive or across Front Street, which the Bissos claim ownership of.
Prior to trial the Commission was dismissed as a party defendant and the alter *1128 native claims for rights of passage were severed. Thus, only the issues of whether Front Street was a dedicated public street and the Bissos’ claims of ownership of Front Street by either acquisitive or libera-tive prescription were tried.
The Trial Court found that “Front Street [was] dedicated to public use and therefore as public property was not subject to acquisitive prescription.”
Seeking reversal of the lower court ruling, the Bissos argue in the first of two alternative assignments, trial court error in concluding that Front Street is a duly dedicated public street owned by the City. The heirs strenuously contend Front Street was not statutorily dedicated thereby precluding ownership by the City. Rather, they maintain the street was only “impliedly dedicated” and therefore at most subject to a servitude of use which has terminated by the liberative prescription of ten years non-use.

Classifications of Dedication

In Arkansas Louisiana Gas Co. v. Parker Oil Co., 190 La. 957, 183 So. 229 (1938), the Louisiana Supreme Court concluded that there were only two types of dedication in Louisiana — statutory and common law (informal or implied) dedication. A third category of dedication, referred to as formal non-statutory dedication, was considered in Banta v. Federal Land Bank of New Orleans, 200 So.2d 107 (La.App. 1 Cir.1967), application denied, 251 La. 46, 202 So.2d 657 (1967)., The Banta court was concerned with the implication in Parker that a dedication not in substantial compliance with Act 134 of 1896 (the basis for statutory dedication in Louisiana, now La. R.S. 33:5051) amounted to a common law dedication conveying only a servitude, not ownership, to the public, where the intent of the grantor was not clearly expressed. The court concluded that a dedication not within the purview of Act 134 of 1896 does not preclude other forms of dedication such as that established by the filing of a plat, which would convey title in the dedicated land to the public. As Banta pointed out, this third category of dedication has been applied to dedications occurring prior to Act 134 of 1896, when there was no provision. for statutory dedication. Richard v. City of N.O., 195 La. 898, 197 So. 594 (1940); Jaenke v. Taylor, 160 La. 109, 106 So. 711 (1926); Flournoy v. Breard, 116 La. 224, 40 So. 684 (1906).
Since Banta, the jurisprudence has generally ignored the category of formal non-statutory dedication, preferring to cite Parker for the proposition that a dedication is either statutory (conveying ownership) or common law (conveying only a servitude to the public). Becnel v. Citrus Lands of Louisiana, Inc., 429 So.2d 459 (La.App. 4 Cir.1983), writ denied, 437 So.2d 1147 (La.1983). However, Garrett v. Pioneer Production Corporation, 378 So.2d 945 (La.App. 3 Cir.1979) is an exception. In Garrett the trial court found an implied dedication which did not divest ownership. On appeal the Third Circuit discussed both statutory and formal non-statutory dedication. On writ of certiorari in Garrett, the Louisiana Supreme Court reversed the Third Circuit holding that there was indeed substantial, compliance with La.R.S. 33:5051 resulting in a statutory dedication divesting ownership. The Court did not reach the issue of non-statutory dedication, but mentioned in a footnote defendants’ argument that there was, in effect, a “ ‘formal’, non-statutory dedication.” Garrett v. Pioneer Production Corporation, 390 So.2d 851, 857-858 n. 6 (La.1980). The question surrounding the third category of dedication was left unanswered. See A. Yiannopoulos, Property Secs. 61-66 in 2 Louisiana Civil Law Treatise 186-201 (2nd ed. 1980) for a discussion of informal dedication.
The Brungardts argue that not only was there an express intent to dedicate Front Street but in fact Front Street has long been in use and recognized as a street. In support of their argument, the Brungardts introduced 35 exhibits, among them numerous plats and maps including an 1899 plan of the City of New Orleans, the 1900 U.S. census, Soard’.s New Orleans Directory for the years 1899 to 1901, and the New Orleans real estate tax rolls for 1895-1901, all *1129 reflecting Front Street as a public street, open and in use.
The earliest plan included in the Brun-gardts’ numerous exhibits plotting the position of Front Street was one drawn by Benjamin Buisson dated April 15, 1836. That plan depicts the subdivision of lots in Fauborg Greeneville, an early subdivision of the city abutting the Town of Carrollton. The plan shows the Brungardts’ lot as a portion of Lot 5 in Square 6 having Front Street as one of its boundaries along with Walnut, Chestnut and Water (now Constance) Streets.
The Brungardts also introduced a copy of an agreement and sale dated December 1, 1838 between the New Orleans Canal and Banking Company, John Greene, Laurent Milladon and James Ogilvie by act before William Young Lewis, N.P. which provided for the sale to Ogilvie of a strip of land separating Greeneville and Carrollton. By the terms of that document, Ogilvie was granted the authority to open all the streets shown on the plan of Carrollton and Greeneville. The purpose of the sale of the strip was to adjust for any misalignment of streets between Greeneville and Carrollton.
Additional Brungardt exhibits were sales of lots in Greeneville dated 1852 and 1853 which property descriptions recite “the whole as per plan drawn by Benjamin Buis-son, surveyor ... on the fifteenth April 1836 and deposited in the office of William Y. Lewis, notary public_” Other exhibits were copies of sales of lots in Greene-ville to and by the ancestors of the Bissos, all referencing the Buisson plan.
The evidence introduced by the Bissos consisted of, among other things, the deposition of David Bollingham, a long-time Bis-so employee. Bollingham’s testimony, confirmed the former location of a house in the Front Street right of way. The house was destroyed by fire sometime in the mid-1980’s. The Bissos also introduced and point to the Sanborn Insurance Map dated 1909 which does not indicate Front Street in existence at that time. To discredit this evidence the City called Edward LeRouge, a 30 year employee of the New Orleans Department of Streets, who testified that the Sanborn Insurance Maps were unreliable, replete with errors and misinformation, and for these reasons were never used by the Department of Streets.
The Bissos also place considerable reliance upon a title opinion issued to the City of New Orleans by Andrew Joffe dated August 26, 1985 which concludes there was neither a formal or informal dedication of Front Street. Opposed to the Joffe opinion is that of Guy W. Smith of Simon, Pera-gine, Smith and Redfearn dated June 9, 1984 which was rendered when the Brun-gardts financed their purchase of Lot 13 which concludes the Brungardts’ lot fronts on a public street — Front Street — and the public records support the existence or public status of Front Street as property of the City of New Orleans.
The Bissos contend the Buisson plan indicating Front Street is not sufficient to show a dedication because there is no evidence the owners and subdividers of the town of Greeneville were the persons responsible for filing the Buisson plan. Obviously, the Bissos argue, only the owners, not just anyone, can dedicate property for use as a public street, and they argue that Garrett, supra, and Witter v. City of Baton Rouge, 546 So.2d 848 (La.App. 1 Cir.1989) support this argument. Moreover, the Bissos argue the irrelevance of the acts of sale in proving the Brungardt case. .These contentions are erroneous.
Although the Garrett court did say that only an owner can validly subdivide and dedicate property, the Court also said that subsequent transactions in reliance on the previously filed plan constituted circumstantial proof of an owner’s intent to dedicate.
It is enough that the plats were filed in substantial compliance with Act 134, and that the plaintiffs’ ancestors in title, rather than objecting to or disavowing the plats expressly relied upon them in their transactions involving the property.
390 So.2d at 858.
Garrett also said that the owner of the property need not be the one to file a subdivision plan; and that the sale of prop *1130 erty subject to the layout of the plan ratifies the plan.
There was no "disavowal or objection to the Buisson plan or the layout of streets and lots. In fact, Joseph Bisso, one of the Bissos’ ancestors in title, relied upon the Buisson plan for sales of lots in Greeneville and specifically the Brungardt lot. Lots were sold with specific reference to the Buisson plan in 1852 by James Ogilvie, in 1853 by Charles W. Wilson and in 1900 by Joseph Bisso. Other sales have acknowledged the squares and streets as laid out in the Buisson plan. Additionally, there was an express intent to dedicate Front Street to public use in the sale of December 1, 1838 by the New Orleans Canal and Banking Company to James Ogilvie.
A party cannot deny the dedication of a public street when his ancestors in title have sold property which they refer to as bounded by a public street. Flournoy v. Breará, 116 La. 224, 40 So. 684 (1906).
When considering dedication of streets before Act 134 of 1896:
Our courts have held that when dealing with subdivisions created prior to the enactment of Act 134 of 1896, the sale of lots in accordance with a plat or plan of subdivision constituted an irrevocable dedication to the public of the streets and alleys shown thereon.... Thus, if it is shown that the dedication occurred prior to 1896, the rights acquired by the public to the property will not be diminished in the absence of strict compliance with the requirements of Act 134. City of Covington v. Glockner, 486 So.2d 837 at 841 (1st Cir.1986), quoting Ross v. City of Covington, 271 So.2d 618 at 620 (1st Cir.1972).
In this case the Brungardt lot and Front Street originally formed a part of property subdivided in accordance with the Buisson plan dated April 15, 1836 more than 60 years before Act 134 of 1896. The Buisson plan has been an official record for more than thirty years and therefore qualifies as an ancient document. R.S. 13:3729. Its designation as an ancient document establishes a prima facie presumption of the execution and genuineness of the instrument. R.S. 13:3730; Garrett, supra. The Bissos offered no evidence to rebut the presumption of the authenticity of the Buisson plan as the legitimate subdivision of Greeneville.
For the foregoing reasons we affirm the lower court ruling that Front Street was dedicated to public use, with title and ownership vesting in the City of New Orleans.
The Bissos alternatively argue the Trial Court erred when it held that Front Street, even if dedicated, could not be lost by acquisitive prescription.
To buttress their claim of acquisitive prescription the Bissos contend they and/or their ancestors adversely possessed Front Street both civilly (constructively) and corporeally (physically) for over thirty years. The Bissos base their physical possession claim on the deposition testimony of David Bollingham who explained the Bissos had a house on the Front Street right of way since the 1920’s until it burned in the mid-eighties. Civil possession, they contend, is evidenced by a chain of title since 1940 when in the Judgment of Possession in the succession of Anna Bisso Tyler, Front Street was allegedly passed down to ancestors of the present Bisso claimants.
The Bissos contend these facts along with relevant jurisprudence and statutory authority supports their position that Front Street was lost to the City by non-use, the City’s failure to record an instrument sufficient to prevent tolling of prescription under La.R.S. 9:5804 and the passage of time.
Continuing their argument, the Bissos point to the case City of New Orleans v. Salmen Brick and Lumber Company, 66 So. 237 (La.1914) for the rule that unlike the immunity granted the State, prescription can run against a municipal corporation. They further argue that in order for a municipality to protect itself from the effects of acquisitive prescription, the municipality must follow La.R.S. 9:5804 which provides:
Any municipal corporation owning alienable immovable property may prevent the running of prescription acquirendi causa against it in favor of any third possessor, *1131 by recording a notice with the clerk of court of the parish where the property is situated, or with the register of conveyances in the Parish of Orleans insofar as property in that parish is concerned. This notice shall contain a description of the property and a declaration that it is public property belonging to the municipality and the recording shall suspend the running of prescription during the time the ownership of the property shall remain vested in the name of the municipality.
The recordation of the written act by which a municipal corporation shall acquire alienable immovable property likewise shall be deemed sufficient notice in order to suspend the prescription.
The Bissos point out that the City failed to file this statutory notice.
Furthermore, the Bissos characterize Front Street as “alienable” or susceptible to private ownership through prescription because of non-use. La.C.C. art. 482; Coliseum Square Association, et al v. City of New Orleans, 544 So.2d 351 (La.1989).
In Coliseum Square the Supreme Court held that the Louisiana Constitution of 1974 gave broad authority to the City of New Orleans to lease a public street to a private corporation, even when the street has been in public use. Inferentially, the City has the authority to sell a public street. It is, however, unnecessary to go further and consider whether a private person can acquire a dedicated street through acquisitive prescription because the Trial Court found “Even though it has not been paved, Front Street has been open for use as a street and municipal address.” That finding of fact is not manifestly erroneous and is supported by the record and in particular by the following evidence.
The Brungardts testified that they used the street subsequent to their purchase and prior to its fencing to go to their property and on more than one occasion saw a neighboring landowner use the street to go to his property which is near the Brungardts’ lot. The exhibits introduced by the Brun-gardts were offered to prove Front Street enjoyed public use for many years prior to any claim asserted by the Bissos and subsequent to that time. Moreover, the City has assigned a municipal address — 7001 Front Street — to the Brungardt property. Other exhibits which are documents filed in the public records designate the claimed property as Front Street.
As to the Bissos claim of possession through family ancestors, more particularly through Edwin N. Bisso, on October 18, 1973 Edwin N. Bisso and his wife’s succession representative sold Lots D-L in Square 6 of Greeneville to James D. Par-kerson and his wife. The property description indicates that Lot L fronts on Front Street. The Brungardts’ lot is a portion of what was Lot L, the lots having been re-subdivided in 1978.
Bisso’s acknowledgement of the street would have served to interrupt acquisitive prescription. C.C. art. 3464.
Even if we assume the Bissos have been in possession of Front Street, their possession is not that required by law to acquire ownership through acquisitive prescription. Notwithstanding the Bisso position that Front Street was never public or open to use, in 1900 Joseph Bisso sold Square 3 to the City. That sale as well as the sale of the Brungardt’s lot in 1973 would necessarily have included the portion of property known as Front Street. La.R.S. 9:2971. A vendor who remains in possession of land after the sale possesses precariously and is under a duty to make known to the vendee his adverse ownership claim before he can possess as an owner. Winn v. Calhoun, 94 So.2d 545 (2 Cir.1957); La.C.C. art. 3437, 3439. The Bissos presented no evidence that they or their ancestors, notified the vendees of an adverse claim of ownership.
For the foregoing reasons, we affirm the judgment of the Trial Court. Costs of the appeal are assessed to the Bissos.
AFFIRMED.