ST. JAMES PARISH

VERSUS

MATTHEW JAMES ROUSSEL

NO. 24-CA-382

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA


ON APPEAL FROM THE TWENTY-THIRD JUDICIAL DISTRICT COURT
PARISH OF ST. JAMES, STATE OF LOUISIANA
NO. 41,771, DIVISION "A"
HONORABLE JASON VERDIGETS, JUDGE PRESIDING


January 29, 2025


**JOHN J. MOLAISON, JR.**
**JUDGE**


Panel composed of Judges Susan M. Chehardy,
John J. Molaison, Jr., and Timothy S. Marcel


**<u>AFFIRMED</u>**
   **JJM**
   **SMC**
   **TSM**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLANT,
ST. JAMES PARISH
Victor J. Franckiewicz, Jr.
Juan J. Moreno

COUNSEL FOR DEFENDANT/APPELLEE,
MATTHEW JAMES ROUSSEL
Martin S. Triche
Sarah A. Legendre
M. Samuel Triche, II

**MOLAISON, J.**

The appellant, St. James Parish ("the Parish"), appeals the trial court's judgment that denied its petition for declaratory judgment involving use of a servitude across the appellee Matthew Roussel's property. We affirm for the following reasons.

**FACTS AND PROCEDURAL HISTORY**

The record indicates that Mr. Matthew Roussel ("Mr. Roussel") purchased residential property on November 17, 2015, at 3309 Denise St., identified as Lot I of Phase II of the Hester Heights Subdivision within St. James Parish. On six lots of Phase II, including Mr. Roussel's property, plat designations grant St. James Parish and its Public Works Department 40-foot-wide servitudes[1] for drainage maintenance and utilities access as per the following:

NOTE: THESE LOTS ARE SUBJECT TO RECORDED RESTRICTIONS.
DEDICATION: (DENISE STREET ONLY)
THE STREETS AND RIGHT OF WAYS SHOWN HEREON, IF NOT PREVIOUSLY DEDICATED ARE HEREBY DEDICATED TO THE PERPETUAL USE OF THE PUBLIC FOR PROPER PURPOSES. ALL AREAS SHOWN AS SERVITUDES ARE GRANTED TO THE PUBLIC FOR USE OF UTILITIES, DRAINAGE, SEWERAGE REMOVAL, OR OTHER PROPER PURPOSE FOR THE GENERAL USE OF THE PUBLIC. NO TREES, SHRUBS OR OTHER PLANTS MAY BE PLANTED, NOR SHALL ANY BUILDING, FENCE, STRUCTURE OR IMPROVEMENTS BE CONSTRUCTED OR INSTALLED WITHIN OR OVER ANY SERVITUDE OR RIGHT OF WAY SO AS TO PREVENT OR UNREASONABLY INTERFERE WITH ANY PURPOSE FOR WHICH THE SERVITUDE OR RIGHT OF WAY IS GRANTED.

LADDIE ROUSSEL, DEVELOPER          5/18/2015
                                   DATE

On Mr. Roussel's property, the Parish's servitude is along the southern boundary of his lot, as seen below. Its path partially sits atop Roussel Farm Road. The 40-foot servitude intersects with a 25-foot wide drainage servitude along his property's western boundary. There is no indication on the face of the dedication that shows an intent to allow the Parish to use the servitude across Mr. Roussel's lot as a public "street" or a "roadway." At the trial, Laddie Roussel, the developer

---

[1] Amber Sheppard, a planning and permitting supervisor for St. James Parish testified that a right-of-way for a public roadway in St. James Parish is 50 feet wide or otherwise requires a variance. She also confirmed that the 40-foot access servitude provides access to the 25-foot drainage easement at the rear of Mr. Roussel's property on Denise Street.

of Hester Heights Subdivision Phase II, testified that the servitude was not intended for the public to use.



Mr. Roussel testified at trial that he built and occupied his home on Denise Street in 2016 and knew there was a drainage servitude when he bought the property. At that time, he placed crushed asphalt over a dirt road on the south part of his property to provide access to a barn on his lot. He regularly graded the road in his yard with the help of his father, Sidney Roussel. Mr. Roussel continued to develop his property by adding a fence in 2018 and a pool in 2021.

St. James Parish's approximately 106-foot-long servitude on Mr. Roussel's property is congruent with a separate servitude granted to St. James Parish that extends from the end of Effie Road, a non-public street in a private subdivision and along the Roussel Farm Road, which is also on private property.



At a time not specified in the record, Mr. Roussel allowed the St. James Parish School Board to begin using the servitude on his property as a "turnaround" for school buses picking up children from Effie Road.[2]  Rick Webre, Director of Operations for St. James Parish, testified that on December 27, 2018, an agreement for the Parish to maintain bus turnarounds for the School Board was signed, which stipulated that each entity would pay one-half the costs involved.  St. James could not produce a work order for the turnaround at issue dated before August 2, 2019. Laddie Roussel testified that the August 2, 2019, work order was for a bus turnaround at the end of Denise Street and was irrelevant to the access servitude. However, St. James Parish equipment operator Troy Roussel testified that in late

---

[2] Evidence suggested that the servitude was also used by garbage trucks picking up waste from Effie Road.

24-CA-382                                             3

2016 or early 2017, he recalled putting down a "little rock" and fixing potholes on the turnaround, which included the servitude at issue, at the school board's request. Mr. Roussel testified that in 2020 and 2021, the Parish "touched up some potholes and put some limestone down" on the servitude.

Mr. Roussel testified that in the summer of 2022, he became concerned about the high volume of traffic driving across the servitude from Effie Road, and he contacted the St. James Parish School Board to request that their buses take an alternate route. Chief of School and Student Support for the St. James Parish School Board, Amy Laiche, testified that she remembered speaking to Mr. Roussel in August 2022 about his request to prohibit busses from using that particular turnaround. Ms. Laiche agreed to the request but needed time to complete a new turnaround. Eventually, the school board entered into a cooperative endeavor agreement with David Roussel to construct a new bus turnaround on Effie Road. In 2023, after a year passed, with no action from the school board to limit access across the servitude, Mr. Roussel blocked the road through his yard with a temporary fence. He testified at trial that his intent was not to restrict parish access to the drainage servitude but to stop "public traffic, school buses" and all traffic driving across his property from Effie Road. When St. James Parish instructed Mr. Roussel to remove the fence, he put a chain in its place. After removing the chain, he dug up the gravel on his property along the servitude and replaced it with grass sod.

On August 29, 2023, St. James Parish filed a Verified Petition for Declaratory Judgment, Injunctive Relief, and Damages at the Twenty-Third Judicial District Court, seeking "reasonable continued use of the servitude by the Parish for road purposes" and "damages for the cost of restoring the road that was removed by [Mr. Roussel]." The trial occurred on December 14, 2023, and March

11, 2024; the trial court rendered a written judgment that denied the relief sought in the petition. This timely appeal followed.

## ASSIGNMENTS OF ERROR

> 1. The subdivision plat clearly identified the location and dimensions of the Access Servitude at issue, and the dedication language describes its purpose broadly enough to include the Parish's use of the servitude as a public road. This was sufficient under La. R.S. 33:5051, and the trial court erred in holding that the Access Servitude was not statutorily dedicated.

> 2. La. R.S. 48:491 describes a straightforward three-year public maintenance requirement to establish a tacit dedication of a public road. As a matter of law, the trial court erred in holding that the three years must be consecutive, and further erred by not recognizing evidence of maintenance outside of the court's limited view of the three consecutive years.

## LAW AND ANALYSIS

On appeal, St. James Parish raises two assignments of error. Specifically, the Parish claims it had the right to convert Mr. Roussel's property into a public road as part of a statutory dedication under La. R.S. 33:5051 or a tacit dedication under La. R.S. 48:491.

*Statutory dedication*

La. R.S. 33:5051 provides in part:

> A. Whenever the owner of any real estate desires to lay off the same into squares or lots with streets or alleys between the squares or lots and with the intention of selling or offering for sale any of the squares or lots, he shall, before selling any square or lot or any portion of same:
> . . .
> B. The map referenced in Subsection A of this Section shall contain the following:
> . . .
> (4) The name of each street and alley and its length and width in feet, feet and inches, or meters.

As indicated above, the plat dedication for Mr. Roussel's property only grants a public servitude "for use of utilities, drainage, sewerage removal, or other proper purpose for the general use of the public." The plat dedication shows no street,

roadway, or right-of-way through Mr. Roussel's lot. The trial judge interpreted the language in the plat as part of his reasons for judgment:[3]

> This Court does not find that the intention to dedicate was established through the language of the dedication. While St. James Parish generously interpreted the language of the dedication to extend to any public use purpose, a narrower interpretation is proper. And under a narrower interpretation, the 2015 Hester Heights Subdivision Phase II Plat does not set out the access servitude to become a road under La. R.S. 33:5051.

St. James Parish argues on appeal that the plat identified the location and dimensions of the access servitude for Mr. Roussel's property and defined its purpose broadly to include the Parish's use of the servitude as a public road for a private subdivision's use.[4]

In A.N. YIANNOPOULOS, PROPERTY § 97, at 211-12 (2 Louisiana Civil Law Treatise 2001) (footnotes omitted), Professor Yiannopoulos wrote on the issue of formal dedications, in relevant part, "In a strict sense, a formal dedication is a donation of a thing or *of its use to the public for designated public purposes*." [Emphasis added.] As observed by the First Circuit in *Cavaness v. Norton,* 96-1411 (La. App. 1 Cir. 5/9/97), 694 So.2d 1174, 1177:

> …the intention to dedicate must be clearly established. *Banta v. Federal Land Bank of New Orleans*, 200 So.2d 107 (La. App. 1 Cir.1967), *writ denied*, 251 La. 46, 202 So.2d 657 (1967). If the fact of dedication is doubtful, the court must look to the surrounding circumstances to determine whether there was an intent to dedicate. When a rational construction of the record negates an intent of a landowner to dedicate a particular piece of land, the fact that reference to the land appears on a map does not effect a statutory dedication. *Pioneer Production Corp. v. Segraves*, 340 So.2d 270 (La.1976); *Hailey v. Panno*, 472 So.2d 97 (La. App. 5 Cir.1985).

---

[3] Appellate Courts do not review reasons for judgment as a part of the judgment itself. La. C.C.P. art. 1918; *Burmaster v. Plaquemines Parish Government*, 07-1311 (La. 8/31/07), 963 So.2d 378, 379. The written reasons for judgment are merely an explication of the trial court's determinations. The Louisiana Supreme Court has held, however, that a court of appeal can use reasons for judgment to gain insight into the district court's judgment, and we refer to them now for that purpose. See, *Wooley v. Lucksinger*, 09-0571 (La. 4/1/11), 61 So.3d 507.

[4] The trial court observed in its reasons for judgment that under St. James Parish Ordinance 102-133(b), the Parish has no obligation to provide a "street" for the residents on Effie Road, which is in a private "family" subdivision.

As a reviewing court, we follow the clearly erroneous/manifest error standard set forth by the Louisiana Supreme Court in *Rosell v. ESCO*, 549 So.2d 840 (La. 1989), when considering the factual findings made by the trial court. If the trial court's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. *Sistler v. Liberty Mut. Ins. Co.*, 558 So.2d 1106, 1112 (La. 1990). In this case, Mr. Roussel does not challenge the Parish's use of the servitude for utilities, drainage, and sewerage removal, and the record shows he has not blocked the Parish's access through his property specifically for those purposes. As previously stated, Laddie Roussel, the subdivision developer that includes Mr. Roussel's lot on Denise Rd., testified at trial that the servitude was not intended for use by the general public. As the trial court observed, if the Parish's interpretation of the servitude dedication stands, it would have the practical effect of allowing the Parish to turn any homeowner's yard into a thruway for traffic. The trial concluded that the servitude dedication language does not contemplate allowing such a substantial overreach. After a review of the record, we find no manifest error in the trial court's ruling on this issue.

*Implied dedication*

Louisiana recognizes a second form of dedication: the common law doctrine of "implied dedication." As opined by the Second Circuit in *O'Quinn v. Burks*, 231 So.2d 660, 663 (La. App. 2 Cir. 1970), "[A]n implied dedication springs into existence by some future act which manifests an intention to dedicate and has the effect of estopping the owner to deny a dedication has been made." In *Cenac v. Pub. Access Water Rts. Ass'n*, 02-2660 (La. 6/27/03), 851 So.2d 1006, 1011, the Louisiana Supreme Court explained:

Implied dedication is a common law doctrine, but it has been recognized by Louisiana courts since the nineteenth century. No particular formalities are required to effectuate an implied dedication. Traditionally, because implied dedication lacks the formalities and safeguards of the other modes of dedication, the two indispensable elements of implied dedication required by the courts are "a plain and positive intention to give and one equally plain to accept."

[Citations omitted.] The Supreme Court also opined in *Cenac* that the burden of proving the implied dedication falls upon the party asserting the dedication, and the question of intent to dedicate to public use is one of fact. *Cenac, supra*, at 1012.

In *Cenac*, the Court also found that even continuous use by the public does not, in itself, prove an implied dedication:

The majority of our cases establish the principle that continuous use by the public alone is insufficient to establish the requisite intent. *See e.g. Kohn v. Bellott,* 169 La. 352, 125 So.269 (1929); *Donaldson's Heirs,* 166 La. at 1063, 118 So. at 135; *Bomar v. City of Baton Rouge,* 162 La. at 346, 110 So. at 499; *Torres v. Falgoust,* 37 La. Ann. 497 (1885). Professor Yiannopoulos, a leading commentator, has explained:

[D]ecisions establishing an implied dedication by the toleration of public use are extremely rare and may be explained on other grounds, such as estoppel vis-à-vis the public authorities. The jurisprudence is well settled that immemorial use by the public does not alone establish dedication.

*Cenac*, 851 So.2d at 1014.

Considering these factors, we have considered whether an implied dedication exists under the facts presented. Here, on the record before us, we find no expressed intention by the original subdivision developer or Mr. Roussel to give the Parish permission to convert a simple utility servitude across residential property into a public roadway.

*Public maintenance*

In its second assignment, the Parish argues that the trial court erred in finding no tacit dedication under La. R.S. 48:491 because of maintenance it performed on the servitude. That statute provides, in the relevant part:

> B. (1)(a) All roads and streets in this state which have been or hereafter are kept up, maintained, or worked for a period of three years by the authority of a parish governing authority within its parish, or by the authority of a municipal governing authority within its municipality, shall be public roads or streets, as the case may be, if there is actual or constructive knowledge of such work by adjoining landowners exercising reasonable concern over their property.

Meanwhile, St. James Parish asserts that the trial court erred in finding that the three years referred to in La. R.S. 48:491(B)(1)(a) had to be consecutive; we note that similar cases support the trial court's interpretation.[5]

In *Parish of St. James v. Bellanger*, 18-395 (La. App. 5 Cir. 12/27/18), 263 So.3d 919, 920-21, *citing Braxton v. Guillory*, 98-379 (La. App. 3 Cir. 10/28/98), 721 So.2d 114, a case that also involved a bus turnaround on private property, this Court observed that a trial court's finding tacit dedication of a road for public use is a finding of fact that an appellate court may not set aside in the absence of manifest error or unless it is clearly wrong. In finding no tacit dedication in this case, the trial court concluded in its reasons for judgment:

> La. R.S. 48:491 requires a minimum of three (3) years of maintenance. The Parish was unable to prove three (3) consecutive years of maintenance. The work orders presented as evidence documented maintenance over the span of at best two (2) years, 2019 through 2021, and were requested by the St. James Parish School

---

[5] *See, for example, Elliott v. Police Jury of Evangeline Par.*, 15 La. App. 542, 544, 132 So. 368, 370 (1931) ("We have already held that the road was not shown to exist as the result of the dedication alleged by the defendants, and, as to the conversion of the road in question into a public road by act of the police juries in keeping it up, maintaining and working it, the law requires that such must be done by the police jury of the parish in which the road is situated. *In this case it was necessary for the road to have been opened, maintained, or worked by authority of the police jury of the parish of Evangeline for three years in succession*, and it must have been done peaceably and without coercion exerted against the owner of the land. The evidence shows that this has not been done, and the road cannot therefore be regarded as having been established in any of the ways provided for by law.") [Emphasis added.] See, also *Tschirn v. Morse*, 394 So.2d 286, 287 (La. App. 1 Cir. 1980) ("Having found that all the requisites were met for a tacit dedication pursuant to LSA-R.S. 48:491, we hold that *the parcel of land described hereinbelow is subject to a servitude in favor of the public by virtue of continuous maintenance for a period of three years in accordance with LSA-R.S. 48:491*, which parcel is described as follows…") [Emphasis added.]

Board for "bus turnaround" maintenance. Matthew Roussel testified that this maintenance was varied and inconsistent. Such sporadic bus turnaround maintenance is not sufficient to tacitly dedicate private property as a public street, as this is merely limited maintenance. Limited maintenance and/or brushing up of the private property does not equate to a tacit dedication. Therefore, this Court finds that the evidence presented by St. James Parish is not sufficient to establish tacit dedication pursuant to La. R.S. 48:491. The work orders and testimony failed to prove that three consecutive years of maintenance were performed on the access servitude that traverses Matthew Roussel's lot.

First, we agree that the record does not indicate the Parish maintained the servitude for three consecutive years. As discussed, in 2016, Mr. Roussel placed asphalt over the servitude at his own expense. Evidence showed he continued to maintain the servitude at his own expense, even after allowing the school board to use it as a bus turnaround. While St. James Parish equipment operator Troy Roussel recalled putting down a "little rock" and fixing potholes on the turnaround in 2016 or 2017, no documentation supports his testimony. Rick Webre, Director of Operations for the Parish, testified that the earliest relevant work order located was dated August 2, 2019; however, Laddie Roussel, the developer of Hester Heights Subdivision Phase II, testified that the work order did not pertain to the access servitude at issue. While the Parish did produce additional work orders,[6] the work orders did not distinguish whether that work occurred on Mr. Roussel's property or the portion of the road that ran from Effie Road to the property line. Mr. Roussel testified that in 2020 and 2021, the Parish "touched up some potholes and put some limestone down." Mr. Webre testified that there is no further documentation after July 2021 of any maintenance performed on Mr. Roussel's servitude except for drainage and grass cutting.

In *Mizell v. Willis*, 20-915 (La. App. 1 Cir. 7/29/21), 329 So.3d 302, 307, *writ denied*, 21-1245 (La. 12/7/21), 328 So.3d 422, the First Circuit discussed the

---

[6] The respective work orders in evidence were dated: August 2, 2019; August 3, 2020; June 22, 2021; July 22, 2021; and; August 17, 2023.

level and type of maintenance necessary by a public entity to establish a tacit dedication:

> An occasional "brushing up" or "token maintenance" of private property is not sufficient to invoke the provisions of LSA-R.S. 48:491 and establish a tacit dedication of a servitude of passage. The question of sufficient public maintenance is one of degree. The issue of whether public maintenance is sufficient to support a tacit dedication is an issue of fact that is squarely within the purview of the trial court.

[Citations omitted.]

The evidence from the trial shows that the Parish maintenance of the servitude over Mr. Roussel's property was intermittent at best and did not extend for three consecutive years. In addition, the evidence did not conclusively show that the Parish's maintenance rose to the level of more than a mere "brushing up" of the servitude. After a review of the record, we cannot say that the trial court was manifestly erroneous in finding that there was not a tacit dedication to the Parish by any work it had done on the servitude that crosses Mr. Roussel's property.

**CONCLUSION**

We find no manifest error in the trial court's determination that the Parish did not have the right to convert Mr. Roussel's property into a public road as part of a statutory dedication under La. R.S. 33:5051 or a tacit dedication under La. R.S. 48:491. Accordingly, we affirm the trial court's judgment.

**AFFIRMED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL
TIMOTHY S. MARCEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**JANUARY 29, 2025** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES
NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 24-CA-382

**E-NOTIFIED**
23RD JUDICIAL DISTRICT COURT (CLERK)
HON. JASON VERDIGETS (DISTRICT JUDGE)
VICTOR J. FRANCKIEWICZ, JR.          M. SAMUEL TRICHE, II (APPELLEE)          MARTIN S. TRICHE (APPELLEE)
(APPELLANT)
SARAH A. LEGENDRE (APPELLEE)

**MAILED**
JUAN J. MORENO (APPELLANT)
ATTORNEY AT LAW
445 NORTH BOULEVARD
SUITE 300
BATON ROUGE, LA 70802